DANIEL BAXTER, Plaintiff, *vs.* THE STATE OF WISCONSIN.

ORIGINAL ACTION, FOR MONEY CLAIM.

Heard June 28.]                    [Decided July 7, 1859.

*State, Action Against—Settlement of Accounts—Estoppel—Pleadings—Demurrer.*

A debt arising out of a contract entered into by the Territory of Wisconsin, is not extinguished by the change from a territorial to the state government; but the state is still liable therefor, in the same manner as the territory had been.

Where a complaint against the state averred that a committee of the legislature of the territory had been appointed with power to *settle* with the plaintiff, and that the committee *did settle* with him; such averment is sufficient

to show that the claim of the plaintiff had been settled and determined between the plaintiff and the territory.

A resolution of the legislature ordered the payment to a claimant, of eight bonds, provided the acceptance should be a bar of all unsettled claims, demands, &c., such acceptance is not a bar to a claim which had before that time been settled by them.

The word "settle" has a definite legal meaning and implies the mutual adjustment of accounts between parties, and an agreement upon the balance.

If a complaint blends unsettled and settled claims in one statement, it is not for that reason obnoxious to a demurrer; but if the pleading is not sufficiently definite the remedy is by motion to strike out the objectionable portion.

The facts in this case are sufficiently stated in the opinion of the court.

*G. Bouck, Att'y Gen.*, for the State.

*J. H. Knowlton and J. H. Sleeper*, for the plaintiff.

*By the Court*, PAINE, J.    This is a suit against the state; brought under the provisions of the act allowing such suits to be instituted in this court.    The grounds of recovery alleged in the complaint may be briefly stated as follows: In 1841 the plaintiff entered into a contract with the Territory of Wisconsin to furnish materials and do certain work in finishing the capitol, for which he was to receive seven thousand dollars; that there was a provision in the contract by which the agent of the territory, who superintended the building, might direct the plaintiff as to any extra work necessary; and that under his directions, the plaintiff did a large amount of extra work, and furnished the materials therefor, for which he was to be paid what they were reasonably worth, and that they were worth $1,784 54; that he made out his account for such extra work and materials, and presented it to the legislature of the territory for allowance; that it was referred to a joint committee, which reported it back with recommendation that a resolution be passed, ap-

pointing a joint committee " with power to *settle* " with the plaintiff, " in relation to charges for extra work contained in said account." That such a resolution was passed, such a committee appointed, and that they examined the account and settled with the plaintiff, the majority of the committee allowing him $1,373 14. The complainant also avers that no part of this amount has ever been paid, though the plaintiff had made frequent applications to the territorial legislature to pay it.

It further sets forth that the plaintiff had other claims against the territory, arising out of non-performance on its part of the contract mentioned, and from a depreciation of bonds which he took in payment on it; and for bonds retained on the contract. That in 1846, the territorial legislature passed a resolution, directing the treasurer to pay over to the plaintiff " eight of the remaining territorial bonds, retained as the residuary amount of said contract; *Provided*, that said Baxter would receive the same in full satisfaction and relinquishment for all unsettled claims, demands, or damages which he may have against the territory." The complaint avers that these bonds were not worth more than $75 00 each, but that plaintiff took them, not as a full payment of unsettled claims, but because he was compelled to. There is an averment that the unsettled claims amount to about $3,000; that all the claims have been presented to the legislature of the state for allowance; and that such allowance has been refused. The complaint claims judgment for the amounts with interest, &c.

To this complaint the attorney general demurs, for the following reasons: 1. The state is not liable upon claims or demands against the territory. 2. Several causes of action are blended in one statement. 3. The receipt by the plaintiff of the eight bonds mentioned, operated as a full payment and discharge of all claims and demands which the plaintiff had

against the territory. And, 4. That the complaint is in other respects uncertain, and indefinite, and does not set forth the plaintiff's claims with sufficient particularity.

The first cause of demurrer presents the question, whether the state is liable for debts owed by the territory. This is a question of much interest, and we have examined it as such; and that examination has led the majority of the court to the conclusion that the state is so liable. The proposition that a change of the form of a government ought not to extinguish its obligations or destroy private rights of property existing at the time of such change, is so consonant to all ideas of right and justice, as to seem incapable of contradiction, and instead of being contradicted, we understand it to be a well established principle, enforced by courts whenever it comes within the reach of their remedies, and acted on by states, in their dealings with individuals.

In Wheaton's Elements of International Law, page 63, the doctrine is stated as follows: "As to public debts, whether due to or from the revolutionized state—a mere change in the form of government, or in the person of the ruler, does not effect their obligation. The essential form of the state, that which constitutes it an independent community remains the same; its accidental form only is changed. The debts being contracted in the name of the state by its authorized agents for its public use, the nation continues liable for them notwithstanding the change in its international constitution. The new government succeeds to the fiscal rights, and is bound to fulfil the fiscal obligations of the former government."

The argument of the attorney general upon this point did not indeed deny the existence of this principle, but controverted its application to this case. He seemed to suppose that there was something in the peculiar character of the territorial governments under our system, and in their relations to

Baxter vs. State of Wisconsin.

the federal government, that rendered the principle inapplicable to their change from territories to states; but we think not; and, on the contrary, could not well imagine a change of government where we should consider it more justly or appropriately applied.

In passing upon this point, we do not deem it material to enter into any discussion as to the powers of Congress in the territories, or of the people in the territories as against Congress; nor to determine whether the wise and liberal policy which has hitherto been pursued by the general government, in organizing the territories, might not in some instances be fairly held to exclude the idea of the liability of the territory for such matters as had usually been provided and paid for by Congress. But, leaving these questions out of view, we think the conclusion to which we have come is sustained by considerations independent of them. For whatever may be the abstract power of Congress in the territories, in practice, it organizes territorial governments, and invests them with very many of the powers and attributes of independent states. They have executive, legislative and judicial departments, and their legislative power extends to all rightful subjects of legislation, and as a necessary consequence, they may enter into contracts, and thereby assume liabilities and obligations. It should also be borne in mind, that extensive as are their powers, these governments are established with a view to the ultimate formation of a state, and are intended to endure only till that result.

So that when a territory enters into a contract, by which it becomes bound and incurs liabilities, it does so, contemplating at the time this probable change in its form of government. If there is any case where the principle to which we have alluded is more peculiarly applicable than to any other, this would seem to us to be such a case. It is held applicable, as we have seen, even where the change in the

government is produced by revolution. It might be urged, with some plausibility in such a case, that where a government had been overturned by violence, for real or imagined abuses, that the new one established in its stead ought not to be bound by its obligations. Yet even this has not been held sufficient to overcome the obvious reasons, founded in practice, upon which the principle under consideration rests.

How much clearer is it that the people of a territory, having contracted an obligation, ought not, by the voluntary and intended expansion of their government into the more perfect power of a state, to extinguish their indebtedness? A doctrine which would accomplish such a result, would require to be very strongly established before we should feel bound by it. But so far from that being the case, we know of no authority that affords it any sanction.

And we think the constitution itself shows that the people of the territory, instead of designing to work any such injustice, were very careful to prevent the change of the form of government from having any such effect. Section 1 of the schedule is as follows: " That no inconvenience may arise by reason of a change from a territorial to a permanent state government, it is declared that all rights, action, prosecutions, judgments, claims, and contracts, as well of individuals as ot bodies corporate, *shall continue as if no such change had taken place,"* etc.

It would seem that language more clearly including and preserving the rights of the plaintiff under his contract with the territory, if such right there was, could 'not well be used. It was suggested that this clause was intended to relate only to the rights of individuals as between themselves, and not to claims or demands against the government, so that while they intended to guard the former, they intended to disregard and destroy the latter. But there is nothing in the language

used that will justify such a construction. The people did not say so, and we should be unwilling to impute to them such an intention, unless they had expressed it with unmistakable clearness.

We are satisfied, therefore, that if the plaintiff had a just debt against the territory, arising out of contract, as set forth in the complaint, that such debt was not extinguished by the change from a territorial to a state government, but that the state still remained liable therefor.

But it was further urged in support of the demurrer, that the complaint does not set forth a settlement. But we think it does. It avers that the committee was appointed to " settle" and that it did settle with the plaintiff. The word " settle," has an established legal meaning, and implies the mutual adjustment of accounts between different parties, and an agreement upon the balance. When, therefore, it is averred that the committee settled with the plaintiff, we think that sufficiently avers his consent, because without his consent expressed or implied, there could be no settlement.

It was suggested that the committee had no power to make a settlement so as to bind the territory, and that their report was merely like the report of the ordinary committees of a legislative body in favor of the plaintiff's claim. But we do not see how this idea can be sustained, in view of the allegations of the complaint. This shows that the claim was first referred to the ordinary committee, and had there been nothing more than the mere report of such committee in its favor, certainly that could not be regarded as a settlement binding upon the legislature. But here the committee to which it was first referred, reported it back, with a recommendation that it be referred to a joint committee to be appointed, " with power to settle with the plaintiff for his claim for extra work." Certainly this shows that the word " settle" was not designed to confer on the committee the ordinary power to examine

and report for the information of the legislature, but that it was used advisedly, and for the express purpose of investing the committee with power to settle with the plaintiff, according to the legal acceptation of the term.

But it was further urged, that the plaintiff was barred by accepting the eight bonds, in pursuance of the resolution of the territorial legislature of 1846, providing that such acceptance should be in bar of all " unsettled claims, demands," &c. In answer to this it might be said that the very language of the resolution confined the operations of the bar to such claims as are " unsettled." It may be said that the word " unsettled," in such a connection, is sometimes used as equivalent to unpaid. But where it appears that the parties using it actually had claims and accounts as to some of which there had been a settlement, and as to others not, there certainly could be no reason to hold that it was used in a sense more general than its fixed legal meaning.

But beyond this the rule is well established, that general words in an instrument, drawn with reference to a particular subject-matter, may be restrained so as to relate only to that subject-matter. And although there may be cases where it has been carried to too great a length, yet we think it properly applicable to this case. The resolution referred to directed the treasurer to pay over to the plaintiff the eight " bonds retained as the residuary amount of said contract," provided that he would receive them in full satisfaction of " all unsettled claims, demands, or damages, &c. This shows that the particular subject of the resolution was the plaintiff's claim on the contract, and the bonds retained thereon, and we think, therefore, that the words of general release contained in the proviso, should be held to relate only to the claims, demands, or damages under the contract. This construction is certainly warranted by the rule, and we see no reason to relax it, where the party paying could, by its own resolution,

prescribe such effect as it saw fit, to the acceptance of the other party.

We think the complaint is liable to the objection of blending the unsettled and settled claims in one statement. But as they might both be contained in the same complaint, the better opinion seems to be that the improper blending of them together is not ground of demurrer. If this objection exists, or if the pleading is not sufficiently definite, the remedy is not by demurrer, but by motion to strike out.

On the whole, we think the demurrer must be over-ruled.

COLE, J., dissenting.