January Term,
1861.

CALKINS and another vs. THE STATE.

CALKINS et al.
v.
THE STATE.

The practice of settling a case or bill of exceptions for the purpose of bringing before and reviewing in this court the proceedings had at the circuit on the trial of issues of fact sent from this court, is authorized by section 4 of chapter 157 of the Revised Statutes, and correct.

One party to a contract in writing may estop himself from taking advantage of it, or perpetrate a legal fraud upon the other party thereto, as well by false and fraudulent representations as to the meaning of the words used in such contract, as to any other matter or thing which constitutes the inducement or consideration for its execution; provided such words are material to a proper understanding of their agreement, and the other party, being ignorant of their true meaning and use, relies and acts upon such representations to his injury. In such case the minds of the parties have never met upon the contract as written.

Since the decision of the case of *Sholes vs. The State*, 2 Chandler, 197, the acceptance, by a creditor of the state, of a sum of money in pursuance of an act of appropriation by the legislature, which appropriation purports to be in *full* payment of a demand, some portion of which was controverted or disallowed, is a bar to any further prosecution or claim on account of such demand, in cases where there is no evidence of fraud, accident or mistake in matter of fact.

The contract for doing the state printing for the years 1855 and 6, was let, by the proper state officers, to Beriah Brown, as the lowest bidder. Brown assigned his interest to *Calkins* and *Proudfit*, who filed their complaint in this court, against the state, to recover money alleged to be due to them for work performed under the contract; and certain issues of fact between the parties were certified to the circuit court for Milwaukee county for trial by a jury. The verdict of the jury was returned to this court, and the plaintiffs moved for judgment upon it.

On the trial in the circuit court, exceptions were taken by the attorney for the state, to the admission and to the rejection of testimony, and to the giving of certain instructions asked by the plaintiffs, and to the refusal to give certain instructions asked for on the part of the state. The issues between the parties, and the questions presented by the exceptions, are sufficiently stated in the opinion of the court.

*H. S. Orton* and *J. H. Knowlton*, for the plaintiffs.

*J. H. Howe*, Attorney General, for the state.

*By the Court*, DIXON, C. J. The practice adopted in this           March 12.

case, of settling a bill of exceptions or case for the purpose of bringing before this court the proceedings had at the circuit, is correct. If it were not upheld by section 4 of chapter 157 of the Revised Statutes, entitled "of actions against the state," which declares that "the circuit court shall proceed to try, by jury, as in other cases, the said questions of fact, subject to the laws, rules and regulations of said court," we should still be inclined to sustain it, as a general regulation indispensable to the administration of justice in such cases. Without such practice it might often happen, as would be the case in this instance, that some of the issues of fact framed under the direction of this court, might be disregarded altogether, and testimony having a most important bearing upon others be improperly excluded from the consideration of the jury, and yet the party aggrieved be without any certain and adequate remedy. The practice of taking and settling exceptions in other causes tried in the circuit courts, for the purpose of a review in this court, is well settled, and, under the provisions of the statute, must be held applicable to cases like the present.

Two objections are mainly urged against the granting of the present motion for judgment upon the special verdict returned by the jury. One is, that the circuit court erroneously withheld from the jury the consideration of the questions of fact presented by the amended answer, relating to the alleged misrepresentations of the bidder Brown, as to the meaning to be attached to the words "folding and stitching, 50 cents per 100," contained in his bid, which constituted the foundation of the present contract. All testimony and offers of proof upon that subject were excluded. In answer to this objection it is contended, first, that the matters thus set up are immaterial and unavailable in law as a defense, for the reason that fraud cannot be predicated of false representations made by one contracting party to another as to the signification of words used by them in their contract; and, secondly because the jury have found that the statements averred to have been made by Brown were true in point of fact. The last position proceeds from a mistake on the part of the counsel. The amended answer avers that

Brown stated and represented that the true and actual mean-
ing of the words was fifty cents per 100 volumes or docu-
ments, and that they did not and could not be understood to
mean fifty cents per 100 signatures or sections as is now
claimed by the petitioners. The jury have found that they
had a known and technical signification among printers and
book binders, which was fifty cents per 100 signatures or
sections, thus showing that the statement of Brown, if made
as alleged, was false. The other position, that the state-
ments, if falsely made as charged in the answer, are incom-
petent as a defense, was decided adversely to the petitioners
at the time leave to file the amended answer was granted.
The answer avers that Brown was a printer by profession,
and well knew the technical signification of the words, if
they had any, and knowing the same, made the statements
alleged, and that the state officers whose duty it was to de-
cide upon and award the public printing to the lowest bid-
der, were "misled by his false representations." It fur-
ther avers that in view of the terms of the several bids which
had been received, the signification of these words became
and was material, for the purpose of determining whether or
not that of Mr. Brown was the lowest, and that if the officers
had not accepted and relied upon the meaning given by him,
the contract would and must have been awarded to another,
whose bid was lower than that of Mr. Brown, according to
the construction which is now sought to be placed upon it.
It also alleged that the officers were ignorant of the techni-
cal or peculiar meaning attached to the words by printers and
binders of books, and that in awarding the contract they re-
lied upon the truth and correctness of the statements thus
made. The statements are averred to have been known to
the petitioners at the time they took the assignment of
the contract, and they are insisted upon as constituting
a defense to the charges for folding and stitching, partly
on the ground of fraud, and partly on that of estoppel.
We do not think it very material upon which ground
the pleader places it, though it seems to us to be more
properly placed on that of fraud, being of opinion now,
as we were on the former occasion, that such statements,

if falsely made, ought to conclude the party making them upon the one ground or the other. We see no substantial reason for saying that a party may not perpetrate a legal fraud, or estop himself from taking advantage of a contract, as well by a false and fraudulent representations as to the meaning of the words used in the contract, as to any other matter or thing which concerns and enters into the inducement or consideration of it. And for this purpose we do not think it material whether the words are such as are commonly used and generally understood, or such as are not so used, but have a special or technical signification with a particular craft or profession. In either case, if one party, himself knowing the meaning of the words and the sense in which they will be understood in the contract, and knowing that the other is ignorant of such meaning and sense, falsely states to the other that they have some other or different signification, such statement, if believed and acted upon by the party to whom it is made, to his injury, amounts to a fraud in the law. The only distinction which can be made between words in common use and terms of art or special application, arises from the greater degree of probability afforded by the former that the party was not unacquainted with their meaning, and therefore not misled or deceived. Ignorance of the true meaning and use of words, whether on the part of public officers or others, however much it is to be regretted and discountenanced, and learning encouraged, has not yet come to be a crime on account of which they are to be outlawed or subjected to gross and palpable frauds and imposition. We do not understand the practicing of frauds upon the ignorant or unwary to be the part and mission of superior learning and ability. We are therefore of the opinion that this objection is well taken, and that it constitutes a sufficient reason for denying the motion. The state should have had the opportunity of proving the false representations, if made; but if they were not, and the allegations in that respect were unfounded, as is claimed by counsel, and as may well be, the jury would have so found, and counsel would have been relieved from making statements upon which it is known we cannot act. If the officers were de-

ceived as to the signification of the words, then the contract as expressed is not their contract, nor that of the state. The minds of the contracting parties never met.

The other objection is, that the petitioners, by accepting the sum of $11,074 83 appropriated by the act approved October 6th, 1856, and which the act recites as being "the amount in full due to them for state printing up to the first day of Sept., 1856, as per account rendered," and the sum of $11,376 26 appropriated by the act approved February 27th, 1857, "being payment in full for printing done for the state of Wisconsin from September 1st, 1856, to January 1st, 1857," at which last mentioned time their contract expired, are concluded from making or setting up any further claim or demand against the state. If this question had not already been settled in this state so as to govern our discretion, we should, under the circumstances of this case, have little doubt as to its determination. In the case of *Sholes vs. The State*, 2 Chand., 197, where Sholes brought his action against the state to recover a part of the price for printing and binding certain books, after having accepted and drawn from the treasury the amount of an appropriation which in its terms was to be *in full* for the books, the court held that he was estopped from setting up any further claim. To the argument drawn from that circumstance the court say that they had heard no answer, nor was it perceived how any could be given; that as between man and man it admits no question, and that the circumstance of one of the parties being a state, cannot affect the matter in the slightest degree; that an individual contracts with his state, not as his sovereign, but as he would with any other municipal power, or with an individual; and having, with a full knowledge of the facts, received compensation in full, it is impossible that such a contract constitutes an exception to the rule by which a party is concluded by his acceptance in full, when there is no pretense of fraud or mistake; that such were the terms upon which the appropriation was made, and such the terms upon which the money was drawn from the treasury; and that there could have been no mental or other reservation on the part of the plaintiff which could in any way bind the state.

Such having been the construction and effect given to an act (Session Laws, 1850, p. 112), precisely like those under consideration, and the latter having been passed after the former had been thus judicially interpreted, it is impossible for us to say, or for the petitioners to set up or claim, that the legislature did not intend that the same force and effect should be given to their language when subsequently repeated on a like occasion, and apparently for a like purpose. On the contrary, the conclusion is irresistible that it was used for that purpose and to accomplish that identical end. The construction which had thus been put upon the language being matter of law, with a knowledge of which the petitioners were chargeable, they cannot be relieved from the effect of their acceptance of the money, unless it be for fraud, accident or mistake in fact, neither of which is pretended.

Without saying that the doctrine of *Sholes vs. The State* can or ought to be applied to every case where the payment of a sum of money has been received and acknowledged as full satisfaction for a pre-existing indebtedness, we may say that we have no doubt of its correctness when applied to cases like the present, where it appears that the liability or amount due was in dispute, and the offer was made with a view to a final settlement of the controversy. The cases where the payment of a less sum is said to be no satisfaction of a greater, are those in which the amount actually due was clear and undisputed, and where the party paying made no claim that he was liquidating the entire debt. To this rule, which has been considered by many as somewhat technical and unfounded, and the application of which courts have been rather disposed to restrict than extend (14 Wend., 119; 2 Met., 285), there are many exceptions (20 Conn., 561). That such offer and acceptance constitute a complete bar in all cases where there exists a *bona fide* controversy as to the liability or amount due, or where the claims are of an unliquidated or uncertain character, and proper matters for judicial investigation as well as compromise and adjustment, will, we think, be found to be sustained by the following adjudications: 7 Cow., 231; 4 Denio, 166; 16 Vt., 329; 21

id., 222 ; 29 id., 230 ; 26 Wend., 39. The reasons given for holding that a tender coupled with any conditions or qualifications is bad, seem also strongly to support this doctrine. They are that the tender must be so made that the party to whom the money is offered may accept it without thereby compromising his future claim to more ; that his acceptance may not be construed into an admission of the truth of the condition upon which it is offered. 11 E. C. L., 117 ; 34 id., 294, 380 and 530.

We make no question that by the word " printing," as used in the acts of appropriation, is to be understood all the work performed by the petitioners under the contract. We have no doubt that both they and the legislature so understood it at the time. Nor do we think it was necessary to the validity of the acts that they should be published. They are not public or general laws, within the meaning of the constitution. They constitute no rule or guide for the conduct and action of the citizen, so as to bring them within the intention of the framers of that instrument.

Motion denied.

Upon the filing of the above opinion, the plaintiffs moved the court to send the case to the circuit court for Milwaukee county, for trial of the issues, 1. Was there a controversy between the state and the plaintiffs as to what amount the plaintiffs should have upon the respective bills presented by them for allowance, or upon any, and which of them, and were the respective sums or any, and which of them, appropriated to the plaintiffs, appropriated to settle such controversy and claim? 2. Did Beriah Brown make the statements and representations at the time of letting to him the printing contract, as alleged in the amended answer of the defendant?

On the 11th of December, 1861, the motion was overruled in the following opinion :

*By the Court*, PAINE, J. Since the decision of this court, denying the plaintiffs' motion for judgment on the verdict of the jury, the plaintiffs' counsel have filed a motion to send the case back to the circuit for the trial of the remaining is-

January Term, 1861.

CALKINS et al.
v.
THE STATE.

sues of fact. One of those issues, and we think the only one, was whether Brown, the assignor of the plaintiffs, made the fraudulent representations alleged in the answer. We can well understand how the state might have insisted on a trial of this issue, if we had been of the opinion that the plaintiffs were entitled to judgment on the verdict upon the others. But it is difficult to see how the plaintiffs can insist on it, when we have already determined that the verdict of the jury upon the issues which have been passed on, negatives any right of action on their part. If the issue concerning the making of those fraudulent representations should be found in their favor, it could not change the result. It would only show that an alleged additional reason for denying their motion for judgment did not exist. The evidence upon this issue was excluded on the former trial upon their objection; and although it might be good ground for a new trial on the part of the state, it is clearly none on the part of the plaintiffs.

The motion asks also to have the issue tried, "whether there was a controversy between the state and the plaintiffs, as to what amount the plaintiffs should have upon the respective bills presented by them for allowance," &c. We do not understand that any such issue is made by the pleadings. On the contrary, it appears fully by the pleadings on both sides, as well as by the verdict, that there was a controversy between the state and the plaintiffs as to the amount the plaintiffs were legally entitled to. The complaint avers that the several bills of the plaintiffs were presented to the legislature, and that certain portions were disallowed. In one instance it is alleged that the bill was "wholly disallowed," "on the ground, as taken by a legislative committee, that your petitioners, by law, were not entitled to anything for said services," &c. It is averred that these amounts were disallowed by "the legislature," that being the body whose action is authoritative, as claimed by the counsel for the plaintiffs. The verdict answers specifically that the various sums which are sought to be recovered in this suit, were "disallowed by the legislature." When the complaint, therefore, avers that the legislature disallowed these sums; when the

answer avers that they were disallowed, and that certain sums were appropriated in full, which the plaintiffs received, and when the verdict finds that they were disallowed by the legislature, does it not seem idle to ask for a trial of an issue whether there was a controversy between the state and the plaintiffs as to the amount they were entitled to have? The simple allegation that the legislature disallowed a claim, shows that they controverted that claim. . For it cannot for a moment be assumed that the legislature disallows anything which it admits to be due. Upon. this point we are fully supported by the printed argument of one of the plaintiffs' counsel, used at the former hearing. He says: "It would be a gross and unpardonable impeachment of the integrity of the legislature, to say that they would not allow what they thought was due. The law under which this action is brought, pre-supposes that the legislature will act in good faith, in determining whether to make an appropriation or not; and that if they refuse to do so, it will be because they think it is not justly due," &c. And again: "The plaintiffs presented to the legislature an account including various items. The legislature allows what it thinks are right, and disallows the rest. If the legislature is correct in its allowance, then of course what they allow is in full, or is, in other words, the full amount justly due the plaintiff. The fact that the legislature say so in the act of appropriation is no better evidence that the legislature thought so, than their simply disallowing the items, *since it would be presumed from the disallowance alone, that in the opinion of the legislature they were not due.*" This is exactly our view of the law; and therefore when the plaintiffs aver that the legislature disallowed certain portions of their accounts, such allegation alone presents a case of a controverted claim fully within the principle upon which our former decision rested.

To say that a claim is controverted, means only that it is disputed. And the inquiry becomes material only in reference to a class of cases which hold that where the debtor, admitting the full amount claimed by the creditor to be due, offers to pay a part in consideration of the creditor's relinquishing all claim for the balance, such an agreement is void

January Term, for want of a consideration, and the creditor, though receiv-
. 1861.        ing the money, may still recover the balance.   It is equally
SLAUSON et al. well settled, that where the debtor denies the validity of the
v.
THE CITY OF claim, this rule does not prevail.   And to assume that the
RACINE.
legislature did not deny or controvert the validity of such
parts of the plaintiffs' claim as they disallowed, would, as
their counsel well says, "be a gross and unpardonable im-
peachment of their integrity."

The pleadings present no issue upon this question; but
the whole case shows, as was distinctly assumed in the for-
mer opinion, that it was a controverted claim, and fully
within the principle which was there held to govern it.

The motion is denied, with costs.