LANGFORD, respondent, *v.* KING, Treasurer of Lewis and Clarke County, appellant.

TERRITORIAL WARRANT—*how paid.* A territorial warrant, duly issued, presented for payment and "not paid for want of funds," in July, 1867, and subsequently sold by the owner, could not be paid by the Territory in money or taxes, at its option, in July, 1868.

TERRITORIAL WARRANTS—*no contract for their payment.* The statute in force in July, 1867, giving the holders of territorial warrants the right to pay taxes with them, was not a contract that they should be so paid.

VALIDITY *of act relating to payment of taxes in money.* The act approved November 19, 1867, which deprives the holders of territorial warrants, not issued in their names, of the right of paying taxes with them, is constitutional.

WHEN *holder of territorial warrant has a vested right.* The holder of a territorial warrant, who presented it in payment of taxes before the passage of the act approved November 19, 1867, acquired a vested right to pay taxes with it.

TERRITORIAL *contracts have no legal obligation.* A citizen cannot sue the Territory and enforce its contracts. They have no legal obligation, but rest upon the good faith of the Territory.

*Appeal from the District Court of the Third District, Lewis and Clarke County.*

LANGFORD applied to the district court of the third district on August 5, 1868, for a writ of mandate to require King, as county treasurer of Lewis and Clarke county, to accept a territorial warrant in payment of taxes due from Langford. The warrant was duly drawn and issued in favor of Green C. Smith, and presented for payment on July 17, 1867. Smith sold the warrant for a valuable consideration

to Langford, who tendered it, in part payment of his taxes, to King on July 11, 1868. King refused to receive the warrant, because it was not issued in the name of Langford, according to the act approved November 19, 1867, "defining the duties of county treasurers, and the payment of county warrants." Langford then applied for the writ of mandate, which was issued in the alternative on August 15, 1868, by the court, MUNSON, J., who made the following order in chambers:

"This case having been submitted to me for a ruling, under stipulation that the same be taken to the supreme court for final decision, without giving the subject that full consideration its importance demands, and for the purpose of raising the question for the consideration of the supreme court, I do hereby make a ruling in favor of the plaintiff and against the defendant, and, therefore, adjudge that the defendant receive said warrant for said taxes due from the plaintiff, as in said complaint specified."

The parties stipulated in writing that no peremptory writ of mandate should be issued until the final decision of the supreme court had been rendered.

The statutes relating to the subject of the action, and further facts, appear in the opinion.

J. H. SHOBER, District Attorney, Third District, for appellant.

The purpose and manner of issuing territorial warrants, as well as the mode, manner and order of payment of the same, are strictly within the control of the territorial legislature.

The legislature has a right to provide means for defraying the expenses of the territorial government. It must necessarily provide laws for levying and collecting taxes. Hence follows the authority to prescribe in what the taxes shall be paid, money, warrants or both.

The act approved November 19, 1867, does not impair the obligation of contracts. The contract made between the Territory, and the holder of the warrant tendered, was that

he should have $10 paid by the territorial treasurer out of any money in the treasury, not otherwise appropriated. This contract is not impaired by that act. He is required to pay his taxes in money when they become due, but his right to receive the money on his warrant is not affected. One use to which the warrant might have been applied has been destroyed by the act.

The appellant properly refused to receive the warrant tendered by respondent, as it was issued to Green C. Smith, and assigned by him to respondent.

LAWRENCE & HEDGES, for respondent.

Const. U. S., art. 1, § 10. No State shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts. If a State cannot do it, much less can a Territory. This law applies to all contracts between the State and individuals. 1 Kent's Com. 462.

All effectual remedies affecting the interests and rights of owners, existing when the contract was made, become an essential ingredient in it, and are parcel of the creditor's rights, and ought not to be disturbed. All suspension by statute of remedies, or any part thereof existing when the contract was made, is more or less impairing its obligation. tion. 1 Kent's Com. 461–2.

What is the contract contained in this warrant under the law existing at the time it was issued? It is negotiable. The indorsee has all the remedies of original payee. Section 14, page 57, and section 1, page 59, of the act of 1867, do not apply to warrants issued prior to November 1, 1867, or they are unconstitutional.

The warrant is in the form authorized by law, and is receivable for full amount of taxes payable into territorial treasury. Acts 1865, pp. 408 and 422, § 35; also, p. 528, § 16.

County treasurers are collectors of taxes and licenses due the Territory. Act 1865, p. 421, §§ 34, 35; act 1867, pp. 45, 240.

The holders of such warrants are deprived of all remedy. Act 1867, pp. 53, 57, 59.

KNOWLES, J. This cause comes to this court on appeal from a judgment awarding the respondent a peremptory writ of mandamus, commanding the appellant to take in payment of the Territory's proportion of a license, territorial warrant No. 458, for $10, issued July 2, 1867, to Green C. Smith.

On the 2d day of July, 1867, the following statutes of this Territory were in full force, viz.: Sections 2 and 5 of "An act to provide for the expenses of Montana Territory." They read as follows:

"§ 2. That the treasurer shall pay, out of any funds in his hands applicable to such use, the amount stated as due in the auditor's warrants, only in the order in which they are drawn according to priority of date; provided that all warrants are receivable into the treasury in payment of any taxes, licenses or other dues due the Territory.

"§ 5. That the warrants drawn by the auditor of this Territory on the treasurer shall be received by the sheriff or collector of the revenue in payment of taxes, fines and penalties, or other dues to the Territory, at par, and shall be received from such officer by the treasurer in settlement of revenue due from such sheriff or collector of the Territory."

Also section 35 of "An act providing for the collection of the revenue." That part of it which refers to territorial warrants is as follows:

"Auditors' warrants are receivable for the full amount of taxes payable into the territorial treasury."

After the issuing of this warrant to Smith, and before the tendering of it to appellant by respondent in payment of the Territory's proportion of a license, the following statute was enacted, viz.:

"§ 1. That, from and after the passage of this act, all taxes and licenses due this Territory, or any county thereof, shall be paid in money at the time the same may become due; provided that any person or persons who may have rendered services to the Territory, or any county thereof, and who hold warrants issued therefor in his or their

names, shall have the privilege of paying his or their taxes or licenses with such warrants, in proportion of sums due the proper county or Territory."

Section 7 of this act provides that "all acts and parts of acts conflicting with this act are hereby repealed." See Statutes of Fourth Legislative Assembly, p. 59.

The first question presented to us is: Did the Territory contract with Smith that this warrant should be received by it in payment of taxes or licenses? If we consider the warrant itself, we have no difficulty in saying the Territory never made any such contract. The form of the warrant is in accordance with the provisions of law. See Statutes of First Legislative Assembly, 408. It is as follows:

No. 458.

TERRITORY OF MONTANA, MADISON COUNTY, }<br>
VIRGINIA CITY, *July* 2, 1867.          }

The treasurer will pay to Green C. Smith or order ten dollars, out of any moneys in the Treasury not otherwise appropriated. Presented for payment.

*July* 17, 1867.                    JNO. H. MING,
                                        *Territorial Auditor.*

JNO. S. ROCKFELLOW,
    *Territorial Treasurer.*

It is contended, however, that those statutes existing July 2, 1867, enter into and are a part of this contract. It is true that laws do enter into and form a part of contracts made during their existence, when parties have left any thing to be supplied by law.

But when parties have made and entered into contracts which are not illegal, the law never enters into them to vary or add to them, so as to make the contract different from what the parties have made it themselves. See 2 Pars. on Cont. 27. Laws give effect to the contracts parties themselves have made. If those laws added to this contract so as to bind the Territory to receive this warrant in payment of taxes, then it also added to the obligations of the receiver of the warrant, and bound him to pay it over to the Territory, on demand, for taxes due the Territory, for the obliga-

tions of such contracts are mutual. We think no one, upon a careful examination of those provisions of the statute and this warrant, can come to the conclusion that the Territory has the power to pay it in money or in taxes, at its option. If not, then it was no part of this contract that this warrant should be received in payment of taxes. We might proceed at some length to analyze each one of those provisions of the statute, cited above, and show that they cannot have the effect claimed by respondent. We deem it sufficient, however, to say that they are general laws, which, for reasons of public policy, gave the holders of warrants the *privilege* of paying them over in liquidation of taxes. And as such they would form no part of this contract. See Sedg. on Stat. and Const. Law, 618, 633.

But let it be granted that the Territory did contract with Green C. Smith that this warrant should be paid out of any moneys not otherwise appropriated, or that it might be paid over in liquidation of taxes. Is that law, repealing those provisions of the statute which gave this right of paying over this warrant in liquidation of taxes, void, as violating that provision of the Constitution of the United States prohibiting States from passing any law impairing the obligations of contracts? What is the obligation of a contract? It is that which gives the parties thereto the legal power to enforce it. See 3 Pars. on Cont. 555, note *s*. Montana Territory is a government created, it is true, by a law of Congress. Yet that law gives it very extensive powers. The reason of the law, which declares that no government can be sued without its consent, applies to this territorial government as well as to any other government.

We hold, therefore, that unless permitted by some law of this Territory, or of the general government, no citizen of this Territory can sue it. There is no law of this Territory or act of Congress permitting it. There is, then, no legal power to enforce territorial contracts. In other words, there is no obligation to territorial contracts. They rest simply upon the good faith of the Territory. Hence, there was no legal obligation on the part of the Territory to take

this warrant in payment of taxes; and the law which took away this right of paying it over in liquidation of taxes, did not impair the obligation of the contract, because there was no legal obligation to this contract, whatever the moral obligation may have been. Had the warrant been presented in payment of taxes before the repeal of the law giving this right, the right would then have become a vested one, and a different question would have been presented to us. In support of these views, see *Hunsaker* v. *Borden*, 5 Cal. 288; *Myers* v. *English*, 9 Cal. 341.

In accordance with these views, we hold that the statute which provides that all taxes, licenses and dues payable to the Territory should be paid in money, unless the person owing the tax or license should hold a warrant, issued to himself, for services rendered the Territory by him, was not void as to this warrant. The appellant, as tax collector, was, therefore, bound to obey it, and to refuse to receive this warrant in payment of the Territory's proportion of a license. Hence the district court erred in awarding the respondent the peremptory writ of mandate.

The judgment of the court below is, therefore, reversed, with costs, and the peremptory writ of mandate denied.

WARREN, C. J., concurred.