Bir. Justice Clifford
delivered the opinion of the court :
Parol evidence of what passed between the parties, either before their contract was reduced to writing or during- the time it was in a state of preparation, is not admissible to add to, subtract from, or in any manner to vary or qualify the terms of the executed instrument; but it is competent for the parties, after the agreement is reduced to writing, at any time before a breach of it, by a new contract not in writing, unless the agreement is one required by law to be authenticated by writing, either to waive the same altogether, or dissolve or annul it, or in any manner to add to, subtract from, or vary or qualify the terms of the instrument, and thus to make a new contract, which, in a proper case, may be proved partly by the written agreement and partly by the subsequent verbal terms'engrafted upon it by the new stipulations. (Emerson v. Slater, 22 How., 41; Ad. Con., 6th ed., 934.)
Services of an important character were rendered by the deceased claimant, during the war of 1812, as commissary of subsistence, and it appears that when he ceased to act in that capacity there remained in his hands $46,112.56 unexpended of the public moneys appropriated for that purpose. On the 26th of January, 1814, the deceased, then in full life, contracted in writing with the Secretary of War to furnish rations to the Northwestern Army for the period of one year, upon the terms and conditions fully set forth in the petition.
Pursuant to that contract, he delivered the rations required to the amount in value of $269,051.28, as appears by the finding of the court below. All of the rations included in that aggregate of value were furnished according to the terms of the written contract, but the United States failed to make the stipulated payments, and made default to the amount of $210,000, and were in fact, as the court below find, unable to fulfill the terms of their contract.
Payments being refused, and the Secretary of War admitting that the United States were unable to fulfill the contract both as to what was due and as to what might become due for future supplies, the contractor notified the Secretary of War that he should furnish no more rations under that contract.
Both parties appear to have acquiesced in that view of the *173 case; but tbe public exigency rendered it imperatively necessary that a large quantity of rations should 'be immediately furnished for the Northwestern Army, and the court below finds that, in order to meet the exigency of the public service, it was agreed by parol between the deceased claimant and the Secretary of War that'the former should furnish the required rations, and that he should receive for the same whatever price they should be reasonably worth at the time and place of delivery, and that the United States, instead of paying as stipulated by the terms of the original contract, might defer payment until such time or times as’they should have the requisite funds.
Eations were furnished by the contractor under the new agreement, exceeding in number 700,000, and the court below finds that the fair and reasonable value of each ration was 45 cents at the times and places at which they were furnished, amounting in the aggregate to the sum of $328,531.54, as appears by the fourth finding of the court below. By the same finding it also appears that the accounting officers of the Treasury settled the accounts of the contractor at the close of the war without any knowledge of the parol agreement, and consequently that they allowed him only the price designated in the original written contract, amounting in the aggregate to the sum of $148,791.87, leaving due to him a balance of $ 179,739.67.
- Unadjusted accounts were also held by the deceased claimant against the United States for transportation services and expenses, and for supplies in the form of rations furnished for the use of indigent citizens and Indians, not embraced nor included within either of the described contracts or agreements, for which he claimed large credits. Instead of adjusting those accounts, the United States instituted a suit against the claimant to recover the balance due from him as commissary of subsistence; and the fifth finding of the court below shows that he was arrested and held to bail in that suit, and that Congress, during the pendency of the same, passed an act for his relief. By that act the proper accounting officers were directed to settle his accounts on just and equitable principles, giving all due weight to the settlements and allowances already made, and to the assurances and decisions of the War Department, provided the sum allowed under such assurances shall not exceed the amount claimed by the United States, for which suit has been commenced against the claimant. (6 Stat. L,, 245.)'
*174 Under and in pursuance of that act the accounting officers of the Treasury settled his accounts as follows:
1.. They allowed him for his transportation claim, and for the rations furnished to citizens and Indians $63,620.48, which is a matter entirely separate and distinct from the rations furnished under the parol agreement.
2. They also adjusted his accounts for the rations delivered to the army under the parol agreement in the following manner : Before making any deductions they estimated the fair and reasonable value of the rations furnished under that agreement, and then deducted the price of rations already paid to the claimant, and “ from the balance thus ascertained they made a further deduction sufficient to reduce the amount of the credit to the” sum due from the claimant as commissary of subsistence, in obedience to the proviso contained in the private act passed for his relief.
Enough appears by the foregoing statement to show that the last deduction amounted to the sum of $131,508.90, which still remains due and unpaid, as appears by the fourth finding of ' the court below.
Subsequently Congress passed another private act, under which the assignees and administrators of the deceased claimant were paid the amount allowed for the transportation claim and for the rations furnished to indigent citizens and Indians, and the present suit was brought to recover the balance for the rations furnished to the army under the parol agreement. (6 id., 314.)
Foiir only of the judges of the Court of Claims were present at the hearing of the case. They were unanimous in all of the findings of fact and in respect to the conclusions of law that the parol agreement was valid, and as to the amount of the balance due to the deceased claimant; but being equally divided upon the right of the claimant to recover, they entered judgment in favor of the defendants for the purpose o'f an appeal to the Supreme Court. Appeal was taken from that judgment by the present claimant, and the assignment of errors is that the second conclusion of law, that the cause of action is barred by the allowance reported by the accounting officers of the Treasury, is erroneous.
Attempt is made to vindicate that conclusion chiefly upon two grounds: (1) That the auditor passed to the credit of the *175 deceased claimant the amount claimed by the United States as due from him as commissary of subsistence, and that he, the claimant, accepted the settlement without protest. (2) That Congress intended by the act directing the adjustment of his accounts that the settlement should be final and conclusive; that the act was in the nature of an offer for a disputed claim ; and that the acceptance of the adjustment is a bar to the claim.
Yerbal agreements between the parties to a written contract made before or at the time of the execution of the contract are, in general, inadmissible to vary its terms or to affect its construction, as all such agreements are considered as merged in the written contract. Both parties admit that proposition; no'r is it denied by the defendants that oral agreements subsequently made, on a new and valuable consideration, before the breach of the contract, may have the effect to enlarge the time of performance of the contract, if it is not one within the statute of frauds* or that such an oral agreement may have the effect to vary any of the terms of the written contract or to waive or ‘discharge it altogether.
Exceptions, it is everywhere admitted, exist to the rule that parol evidence is not admissible to contradict or vary the terms of a written instrument. Most of such exceptions are enumerated by Mr. Greenleaf, and in the course of that enumeration he says: aNeither is the rule infringed by the admission of oral evidence to prove a new and, distinct agreement upon a new consideration, whether it be as a substitute for the old or in addition to and beyond it; and if subsequent and involving the same subject-matter, it is immaterial whether the new agreement be entirely oral or whether it refers to and partially or totally adopts the provisions of the written contract, provided the old agreement be rescinded and abandoned.” (1 Greenl. Ev., 12th ed., § 303; 2 Taylor’s Ev., 6th ed., § 1044; Goss v. Nugent, 5 B. & Ad., 65; Nelson v. Boynton, 3 Met., 400; Leonard v. Vredenburg, 8 Johns., 39; Marshall v. Lynn, 6 M. & W., 109; Stead v. Dawber, 10 Ad. & E., 57; Harvey v. Grabham, 6 Ad. & E., 65; Stowell v. Robinson, 3 Bing., N. C., 927.)
Sufficient appears in the very nature of the arrangement to show that the promise of the United States was made upon a good and valid consideration, as nothing is better settled than the rule that if there is a benefit to the defendant and a loss to *176 the plaintiff, consequent upon and directly resulting from the defendant’s promise in behalf of the plaintiff, there is a sufficient consideration, moving from the plaintiff to enable the latter to maintain an action upon the promise to recover compensation. (1 Pars, on Con., Oth ed., 431.)
Other authorities state the rule much stronger, authorizing the conclusion that benefit to the party by whom the promise is made, or to a third person at his instance, or damage sustained at the instance of the party promising by the party in whose' favor the promise is made, is sufficient to constitute a good and valuable consideration for the support of an action of assumpsit. (Violet v. Patton, 5 Cranch, 150; Chit, on Con., 28; Townsley v. Sumrall, 2 Pet., 182.)
Modern authorities supporting the proposition that parol evidence is admissible to prove such a new agreement, under the circumstances disclosed in this case, are very numerous, and are quite sufficient to show that the proposition may be regarded as an established rule of decision. (Cummings v. Arnold, 3 Met., 489; Bank v. Woodward, 5 N. H., 99; Barley v. Johnson, 9 Cow., 99; Blood v. Goodrich, 9 Wend., 75; Lindley v. Lacey, 17, C. B., N. S., 584.)
Apply that rule to the case, and it is quite clear that the whole amount claimed by the plaintiff was due to the deceased claimant at the time his accounts were adjusted by the accounting officers of the Treasury, in addition to the amount claimed by the United States in set-off for balance due from him as commissary of subsistence. Well-founded doubt upon that subject cannot be entertained, as it satisfactorily appears that in order to reduce his claim to an amount not exceeding the claim of the United States, those officers found it necessary to deduct from the aggregate estimate of the value of the rations furnished under the parol agreement, an amount exactly equal to the balance found due to the claimant by the subordinate court from whose judgment the appeal is prosecuted in this case.
Nothing was paid to the claimant under that private act except what was allowed to the claimant for services and expenses in furnishing transportation and rations for the use of Indians and indigent citizens. He was discharged from arrest, and the balance due from him to the United States for the moneys in his hands as commissary of subsistence was also *177 discharged, but nothing was paid to him for the large balance now found to be due by the court below. Argument to show that such a settlement is not a bar to the residue of the claim is unnecessary, as the proposition is utterly destitute of merit and repugnant to the plainest dictates both of law and justice.
Opposed to that is the suggestion, in behalf of the United States, that the act of Congress was in the nature of an offer of compromise, and that the acceptance of the adjustment is a bar to the claim.
Support to that proposition is attempted to be drawn from the decision of this court in the case of Mason v. United States (8 C. Cls. R., 125 ; 17 Wall. R., 70;) but the court here is very clearly of the opinion that the case cited affords no countenance whatever to any such conclusion. Muskets were wanted by the United States in that case, and it appears that the plaintiff in that controversy contracted to manufacture and deliver at a specified time large quantities of such arms at the price specified in the contract. Arms of the kind were delivered and paid for, and the plaintiff was notified, by order of the Secretary of War, that a larger quantity would be received. Preparations were accordingly made by the plaintiff to fill the second order, but the Secretary of War subsequently appointed a special commission to audit and adjust all such orders and claims. They reported that the contract should be confirmed to a certain extent upon the condition that the contractor should, within fifteen days after notice of their decision, execute a bond, with good and sufficient sureties, for the performance of the modified contract; and the case shows that he executed the modified contract and gave the required bond. By that contract he engaged to manufacture thirty thousand muskets, and the finding of the subordinate court showed that the contract was fulfilled by both parties.
What the court decided in that case was that the claimant voluntarily accepted the modification of the contract as suggested by the commissioners, and that he executed the new contract in the place of the one superseded, which new contract he must have understood was intended to define the obligations of all concerned. Beyond all doubt the new contract in that case was substituted for the old one, and the court held that no party, after accepting such a compromise and executing such a discharge, could be justified in claiming damages for a *178 breach of the prior contract which had been voluntarily modified and surrendered.
Other cases to the same effect have been decided by this court. (The United States v. Child, 12 Wall., 222; 7 C. Cls. R., 209; The United States v. Justice, 14 id., 535 ; 8 C. Cls. R., 73.) Rone of those cases, however, proceed upon the ground that sucha commission possesses any judicial power to bind the parties by their decision or to give the decision any conclusive effect. Claimants in such cases may appear before the commission or not, as they choose, but the decision is, if they do' appear and accept the terms awarded as a final settlement of the controversy, without protest, they must be understood as having precluded themselves from further claim and litigation.
Where a party accepts the amount awarded in such a case, it is just to conclude that he acquiesces in the decision of the tribunal by which a part of the claim is rejected as well as in the finding in his favor. But the accounting officers in this case were forbidden by law to allow the claimant anything beyond the amount in his hands as commissary of subsistence, and they’ obeyed the directions given in the act of Congress. Manifestly the claimant had no option upon the subject, and in the opinion of the court it would be an unreasonable construction of the act of Congress to suppose that its framers intended that the claimant should relihquish the large balance found to be due him in consideration of his discharge from arrest, and the discontinuance of the suit against him for the recovery of the amount due from him to the United States.
Certain cases from the State reports are referred to, which it is supposed assert a different rule, but the court here is of a different opinion. (Sholes v. State, 2 Chand., 182; Baxter v. State, 9 Wis., 44; Calkins v. State, 13 Wis., 389.)
Suffice it to say that in the case before the court no appropriation whatever was made in favor of the claimant. Where the claim is disputed and an appropriation is made in favor of the claimant for an amount less than the amount claimed, and the appropriation purports to be in full payment of the demand, the rule may be different, but it is sufficient to say in response to those authorities that nothing was appropriated in this case, and the accounting officers of the Treasury were forbidden to allow anything beyond what was involved in the pending suit against the claimant.
*179 Judgment reversed and tbe cause remanded, with instructions to render judgment in favor of tbe petitioner for tbe amount found to be due him in tbe fourth finding exhibited in tbe transcript.