## RICHMOND v. PEOPLE OF PORTO RICO.

### (Supreme Court, Special Term, New York County. June, 1906.)

TERRITORIES—ACTION AGAINST PORTO RICO—RIGHT OF ACTION.

> Porto Rico, by virtue of Act Cong. April 12, 1900, c. 191, 31 Stat. 77, providing for a civil government for Porto Rico, defining what persons shall be deemed citizens thereof, who shall constitute a body politic, with governmental powers with power to sue and to be sued, and conferring legislative authority, etc., possesses sufficient of the qualities of sovereignty to exempt it from liability to process and jurisdiction of the courts of New York.

Action by Frank H. Richmond against the people of Porto Rico. On motion to vacate the summons and dismiss the complaint and to set aside the service of the same. Motion granted.

Strong & Cadwallader (Francis S. McGrath, of counsel), for the motion.

Frank H. Richmond (Edward H. Daly, of counsel), opposed.

GIEGERICH, J. The defendant appears specially and moves to vacate the summons and dismiss the complaint on the ground that the court is without jurisdiction, and also to set aside the service of the summons and complaint on the ground that such service was not made upon an officer of the defendant then acting as such. The action is brought for the recovery of the sum of $500, with interest from July, 1902, for professional services rendered by the plaintiff in defending certain actions and proceedings pending in the courts of the Island of Porto Rico, to which this defendant was a party. The service of the summons and complaint was made upon Beekman Winthrop, who was temporarily within this state on his way to the Island of Porto Rico, there to resume his duties as Governor thereof. As stated above, there are two distinct branches of the motion; one being to vacate the summons and dismiss the complaint on the ground that the courts of this state have no jurisdiction in any event over the defendant, which is an independent civil government, and the other branch of the motion being to set aside the service of the summons and complaint on the ground that the person served, although the Governor of the defendant, was not then acting as such. It will not be necessary to consider the second branch of the motion, because of the conclusion I have reached that the court is without jurisdiction, however service might have been made or attempted. The plaintiff, in a learned and able brief, recognizes the principle of the immunity of a sovereign nation from process issued out of the courts of a sister nation or of one of the states of this Union, but claims that the defendant does not possess such attributes of sovereignty as to bring it within this rule, but, on the contrary, is, and should be, treated as a foreign corporation doing business within this state; it being alleged and not disputed that it maintains an agency in this city for the sale of the products of the Island of Porto Rico. At this point it will be useful to advert to the act of Congress which created the defendant as a body politic. That act constitutes chapter 191 (31 Stat. 77) passed April 12, 1900, and is entitled "an act temporarily to provide

revenues and a civil government for Porto Rico, and for other pur-
poses." Section 7 of that act, after defining who are to be deemed
citizens of Porto Rico, provides that "they, together with such citizens
of the United States as may reside in Porto Rico, shall constitute a
body politic under the name of the People of Porto Rico, with govern-
mental powers as hereinafter conferred, and with power to sue and to
be sued as such." Legislative authority, both civil and criminal, is con-
ferred in the following language:

"Sec. 15. That the legislative authority hereinafter provided shall have
power by due enactment to amend, alter, modify or repeal any law or ordi-
nance, civil or criminal, continued in force by this act, as it may from time
to time see fit."

Governmental power is also recognized and conferred; section 16
providing as follows:

"Sec. 16. That all judicial process shall run in the name of 'United States
of America, ss.: the President of the United States,' and all criminal or
penal prosecutions in the local courts shall be conducted in the name and by
the authority of 'The People of Porto Rico,' and all officials authorized by
this act shall, before entering upon the duties of their respective offices, take
an oath to support the Constitution of the United States and the laws of
Porto Rico."

Then follow provisions prescribing the powers and duties of the ex-
ecutive branch of the government, to wit, the Governor and the ex-
ecutive council, and the legislative branch, known as "the Legislative
Assembly, of Porto Rico." Among the powers conferred upon the
Governor are to grant pardons and reprieves, to remit fines and for-
feitures, to commission officers, to veto legislative enactments, to be
commander in chief of the militia, and to execute the laws; and in that
behalf he is clothed with "all the powers of Governors of the terri-
tories of the United States that are not locally inapplicable." The ex-
ecutive council comprises a secretary, an attorney general, a treasurer,
an auditor, a commissioner of the interior, and a commissioner of edu-
cation, who, together with five other persons, constitute such council,
and, in addition to certain legislative duties imposed upon them as a
body, there are specified individual duties prescribed. The legislative
power is lodged in "the Legislative Assembly of Porto Rico," composed
of two houses; one being the executive council and the other the house
of delegates, consisting of 35 members elected biannually by the quali-
fied voters in a manner prescribed in the act. Some of the powers with
which that legislative body is clothed are the following:

"To create, consolidate and reorganize the municipalities, so far as may be
necessary, and to provide and repeal laws and ordinances therefor; and also
the power to alter, amend, modify and repeal any and all laws and ordinances
of every character now in force in Porto Rico, or any municipality or dis-
trict thereof, not inconsistent with the provisions hereof."

The act also provides for a judiciary and makes some elaborate pro-
visions with respect thereto, but leaves to the Legislative Assembly the
authority to legislate from time to time as it may see fit with respect to
said courts, and any others they may deem it advisable to establish, their
organization, the number of judges and officials and attachés for each,
their jurisdiction, their procedure, and all other matters affecting them.

Without going into greater detail, enough of the provisions of this act of Congress have been referred to to show that the defendant, although not an independent sovereign power, nevertheless has delegated to it important governmental functions, both of a legislative and executive character. The status of the defendant is not precisely like that of any of the subdivisions of our government heretofore existing. It more nearly approaches that of a territory than of a state or county, the powers of the Governor, for example, being measured by the powers of Governors of the territories of the United States that are not locally inapplicable, and the same provision is made with respect to the powers of the Attorney General. In Territory of Wisconsin v. Doty, 1 Pin. (Wis.) 396, a verdict was rendered for the defendants and judgment was entered against the territory for costs. The territory then sued out a writ of error on the ground, among others, that a judgment could not be entered against it. Among other things the court said (pages 405, 406):

"The sovereignty of this section of the Northwestern Territory is yet in the United States, and in pursuance of that clause of the Constitution giving to Congress the power to dispose of, and to make all needful rules and regulations respecting, the territory of the United States, the act establishing the territorial government of Wisconsin was passed. By that act a government was established, or created, composed of executive, legislative, and judicial branches. * * * Hence it is apparent that by this law a municipal corporation or government is created, subject to the control of and immediately connected with the government of the United States. * * * By virtue of its incorporation all the powers and functions of sovereignty exist subject only to the supervision and control of the general government. * * * For all necessary purposes of government Wisconsin is as a sovereignty, and should be entitled to the same immunities. It is a territory of the United States and is considered thereby a part of the United States, or immediately connected therewith."

See, also, Beachy v. Lamkin, 1 Idaho, 50; Langford v. King, 1 Mont. 33; Fisk v. Cuthbert, 2 Mont. 593; Riddick v. Amelin, 1 Mo. 5; Baxter v. State, 9 Wis. 38; Am. & Eng. Ency. of Law, vol. 28 (2d Ed.) p. 57; Sloman v. Governor and Government of New Zealand, 35 L. T. 454.

The language above quoted from the decision in Territory of Wisconsin v. Doty might be used with equal truth in the present case. Furthermore, as was observed in Beachy v. Lamkin, supra, at page 52 of 1 Idaho:

"In no event could this court render a judgment against the territory for costs. We have no means of enforcing it; there being no process by which it could be made effective. If the territory is liable for costs, the account must be presented in the usual way and the liability discharged, as all others are. An execution could not issue and the judgment would be entirely nugatory and void."

My conclusion is that, although the defendant is possessed of only limited and subordinate governmental powers, it nevertheless possesses sufficient of the qualties of sovereignty to exempt it from liability to the process and jurisdiction of our courts.

The motion is granted, without costs.