## KERCHEVAL VS. DOTY and others

COMPROMISE.   (1–5) *Settlement of conflicting claims ; on what grounds permitted to be impeached.*   (3) *What constitutes fraud in such settlement.*   (4) *What claims are proper subjects of compromise.* (5) *Party enjoying benefit of settlement for long period, can not disregard it without showing fraud.*

DEED. MORTGAGE.   (6–8) *Proof of conditional delivery.*   (9–10) *Waiver of condition annexed to delivery.*   (11) *Neglect to perform condition, not proof sufficient of fraud.*

Kercheval vs. Doty and others.

1. An adjustment and compromise of a *bona fide* controversy as to matters which are fairly the subject of debate between the parties at the time of such compromise, each party acting with full knowledge of the facts, and no element of fraud or of serious or injurious mistake intervening, will always be upheld by the courts.

2. Where two persons, claiming title to the same piece of land, enter into a negotiation and settlement, in pursuance of which one accepts a conveyance of the land from the other, and mortgages it back to secure payment of a certain sum as purchase money, the mortgagor cannot resist a foreclosure on the ground that he had a perfect title before accepting such conveyance, and therefore the mortgage was without consideration, unless he can show that such settlement was procured by fraud in the mortgagee, or through some serious mistake of fact on his own part.

3. If the claim set up by one of the parties was a mere *sham*, or without color of right, *it seems* that this might be such a fraud as would prevent the settlement from being a bar.

4. Plaintiff claimed the land here in question as devisee of the patentee, whose will had been duly probated. Defendant claimed under four tax deeds of different dates between 1840 and and 1856. *Held*, that these conflicting claims were proper subjects of mutual arrangement and compromise.

5. Defendant, having enjoyed the benefit of plaintiff's conveyance to him for more than ten years before the commencement of this action, and having sold and conveyed considerable portions of the land, cannot now, without showing fraud in such settlement, disregard it and cast upon the plaintiff the burden of establishing her title.

6. Whether in any case, where a deed complete in form to convey title has been voluntarily delivered by the person therein named as grantor to the person therein named as grantee, testimony is admissible to show a mere oral agreement that the deed should not take effect until the grantee had performed some condition named, *quære*.

7. If testimony is admissible for such a purpose, it should be received and acted upon with the greatest caution, and the fact should be established beyond reasonable controversy, and not simply by a preponderance of testimony.

8. In this case, the testimony, which was conflicting, is *held* insufficient to establish such a *conditional* delivery of the mortgage sought to be foreclosed.

9. If the delivery was conditional, yet, defendant having notified plaintiff's agent, two months after the record of the mortgage, that the condition had not been performed, and that this default, *if he (defendant) chose to so consider it*, invalidated the settlement, and having then

continued in possession of the land, claiming title under plaintiff's deed, without notifying plaintiff of any intention to disavow the settlement, or offering to restore to her such title as she had conveyed to him — this is *held* a *waiver* of the condition.

10. Subsequent sales and conveyances of portions of said land by defendant, with full knowledge of the nonperformance of such alleged condition, and *without* notice to plaintiff of a disavowal of the settlement on that ground, are also held a *waiver* of the condition.

11. The neglect of plaintiff (or her agent to whom the mortgage ran), to perform the condition on which defendant claims that the mortgage was to take effect, is no proof of *fraud* to invalidate the settlement in this case, especially where it appears that this was a mere accidental or careless omission, without actual fraudulent intent, and against plaintiff's interest.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action for the foreclosure of a mortgage given by the defendant *Charles Doty* to one Field, April 25, 1859, and by Field assigned to plaintiff, the mortgage covering thirty-one lots constituting a portion of the southwest quarter of the southwest quarter of section 15, township 20 north, of range 17 east, in the village of Menasha. The answer of *Charles Doty* alleged that on the 21st day of November, 1850, he purchased of one James Doty the tract of land including the lots in question, paying a valuable consideration therefor, and thereupon went into possession, and shortly after, and long before April, 1859, platted the tract into village lots ; that he sold many of the lots for value, giving warranty deeds, upon which lots houses were erected ; and that defendant and his representatives were in actual possession and occupancy of the land up to about the month of April, 1859, when one Moses Field appeared, claiming to be the agent of *Maria Kercheval*, the plaintiff, and claiming that *Maria Kercheval* was the owner of said land, but that he, Field, had full power, by warrant of attorney, to sell or to settle with the claimants of the land, and to convey the interest of said *Maria*, " and then claimed to bring, or had brought, an action or actions to recover the possession of the same for and in behalf of the said *Maria* ; whereupon, and for the purpose of

avoiding legal proceedings, and for the sole and only purpose of quieting the title to the said lands," the defendant *Doty* and said Field entered into an agreement to the effect that the said *Maria*, by said Field as her attorney, should execute and deliver to defendant a conveyance of the land, and immediately put on record a power of attorney from said *Maria* to Field, authorizing him to make such conveyance, and that defendant *Doty* should give Field a bond for $1,650, due in ten years, secured by mortgage on the lots in question; that it was further agreed that Field should accept and receive by assignment in lieu of money, and at any time within ten years, other securities, mortgages, notes, or demands which defendant *Doty* might have or receive from other people, to be delivered to one Potter, and that Field should execute a power of attorney to Potter authorizing him to receive such securities and to discharge so much of the mortgage as should be paid thereby, and to release the lots *pro rata* from the mortgage. The answer further alleged that the papers were drawn in accordance with the agreement, but that Field did not sign the power of attorney to Potter, but stated that he was in a great hurry and wanted to consult counsel in relation thereto; that he would take the papers to Oshkosh and would put the powers of attorney on record and send them to Potter, if he concluded to carry out the arrangement; that defendant consented to this, but not intending to treat it as a delivery of the bond and mortgage unless Field should execute and record the two powers of attorney; that Field immediately put the bond and mortgage on record and left the state, without executing or recording the power of attorney to Potter, nor did he ever afterward execute or deliver said power, nor put upon record the power from said *Maria* to him until June 11, 1869, a short time prior to the commencement of this suit; but that Field, in direct violation of his agreement, placed upon record the said mortgage, and carried away the bond, which mortgage was the same set forth in the complaint. The answer further alleged that said *Maria*

was not the owner of the land, and that defendant never received any consideration for the bond and mortgage; that he was willing to surrender any interest which he might have obtained through her deed; and that at some time in the year 1860 he had notified Field that the contract had never been completed, and that he should hold the transaction void.

The plaintiff's replication to *Doty's* answer admitted the conveyance of the land from James Doty to *Charles Doty*, but denied that James Doty had any title, except through fraudulent tax deeds, and admitted the platting of the lots and selling of the same by *Charles Doty*. The replication further alleged that about the month of April, 1859, plaintiff commenced her action against *Charles Doty* and others, his grantees, to recover said lands, and that the bond and mortgage in question were given by said *Charles* in settlement of plaintiff's claim; that the same were delivered to Field absolutely and without any verbal agreement or condition, except that *Charles Doty* insisted on Field's surrendering a certain letter to James D. Doty, pertaining to taxes, out of which grew the tax deed by which James Doty claimed the property when he conveyed to *Charles*, and that said letter was delivered accordingly. The replication further alleged title in fee to the lands in *Maria Kercheval*, at the time of such settlement, since which time *Charles Doty* had conveyed away all the lots covered by the mortgage, and that it was not in his power to surrender to plaintiff any part of the interest or title which he had received by the conveyance from plaintiff. Except as thus admitted, the replication denied all other allegations of the answer. The evidence is sufficiently stated in the opinion. Finding for defendants, and judgment dismissing the complaint; from which plaintiff appealed.

*Moses Hooper*, for appellant, to the validity of the contract of settlement, cited 1 Parsons on Con., 364, and cases there cited, and the note to *Stapilton v. Stapilton*, 3 L. C. in Eq. (3d Am. ed.), 406, 408. And he argued that there was a sufficient consideration for defendant's bond and mortgage, arising out of

Kercheval vs. Doty and others.

the facts that plaintiff's deed perfected the title of defendant's grantees of portions of the land, and fulfilled his covenants of warranty (*Ely v. Wilcox*, 26 Wis., 96, 97 ); that by the transaction defendant procured the discontinuance of litigation then pending (*Ailee v. Backhouse*, 3 M. & W., 633 ; *Stapilton v. Stapilton, supra* ); and that defendant and his grantees have had undisturbed possession under this deed until their title has ripened and been perfected by limitation, if not good before. *Ludlow v. Gilman*, 18 Wis., 552. 2. To the point that, after a voluntary delivery of the mortgage, etc., to plaintiff's agent, evidence of a parol agreement that they should be held in escrow, or for any purpose contrary to, or inconsistent with, the terms of the written instruments, was incompetent, he cited Sheppard's Touchstone, 59 ; *Bibb v. Reid*, 3 Ala., 88 ; *Moss v. Riddle*, 5 Cranch, 351 ; *Fairbanks v. Metcalf*, 8 Mass., 237, 238 ; *State v. Chrisman*, 2 Ind., 126 ; *Hyatt v. Simpson*, 8 id., 256 ; *Worrall v. Munn*, 1 Seld., 229 ; *Braman v. Bingham*, 26 N. Y., 492 ; *Truman v. McCollum*, 20 Wis., 370 ; *Flagg v. Mann*, 2 Sum., 486 ; 3 Washb. R. P., 267. He also argued, 3. That if there was a collateral agreement, as claimed, in reference to recording the power of attorney to Field, and executing power of attorney to Potter, it was not a condition precedent; that where mutual covenants go to the whole consideration on both sides, they are mutual considerations, the one precedent to the other, but when the covenants go to only a part of the consideration, a remedy lies on the covenant to recover damages for a breach of it, but it is not a condition precedent. *Grant v. Johnson*, 5 Barb., 161 ; *McCullough v. Cox*, 6 id., 390 ; *Bennet v. Pixley*, 7 Johns., 250 ; *St. Albans v. Shore*, 1 H. Bl., 273, note ; 2 Parsons on Con., 527, 677. 4. That if the making and recording of the powers of attorney were conditions precedent, they were waived by defendant, and the contract insisted on ; and that when a party wishes to disaffirm his contract, having a right to do so, he must do it at the earliest possible moment, or courts will not relieve him. *McIndoe v. Morman*, 26 Wis.,

588; *Weed v. Page*, 7 id., 503; *Williams v. Ketchum*, 21 id., 432; *Grant v. Law*, 29 id., 99 ; *Brumfield v. Palmer*, 7 Blackf., 227; 6 id., 21 ; 9 Ind., 82 ; 42 N. H., 316 ; 24 id., 288; *Brinley v. Tibbets*, 7 Me., 70 ; *Alexander v. Utley*, 7 Ired. Eq., 242.

*Mariner, Smith & Ordway*, for respondents, contended : 1. That there never was a valid delivery of the bond and mortgage ; that while possession is *prima facie* evidence of an unconditional delivery, it is only *prima facie*, even in case of a *deed* of land (*Gilbert v. N. A. Fire Ins. Co.*, 23 Wend., 43; *Jackson v. Perkins*, 2 id., 308 ; *Ford v. James*, 4 Keyes, 300); that in case of a bond or other instrument which, on its face, gives only a *right of action* if its conditions or provisions are not performed, but which carries no title, and the return of which to the maker *destroys such right of action* (*People v. Bostwick*, 32 N. Y., 445), the rule is still more fully established (*Wood v. Poughkeepsie Mut. Ins. Co.*, 32 N. Y., 619 ; *France v. Ins. Co.*, cited in Bliss on Life Ins., 240 ; *Myers v. Ins. Co.*, 27 Pa. St., 278 ; *Bidwell v. Ins. Co.*, 40 Mo., 42 ; Bliss on Life Ins., § 164; 1 Story on Con., § 32; *Lovett v. Adams*, 3 Wend., 380; *Bronson v. Noyes*, 7 id., 188); and that the agreement of Mr. Field to put upon record his power of attorney from *Mrs. Kercheval*, and to execute and record the power to Potter, was a *condition precedent* to his right to have the bond and mortgage. 1 Story on Con., §§ 27, 32 ; 2 id., § 977, and note 3 on pp. 552–555 ; *Dana v. King*, 2 Pick., 155 ; *Seymour v. Bennett*, 14 Mass., 266 ; *Hunt v. Livermore*, 5 Pick., 395. 2. That defendant *Doty* never *waived* the performance of these conditions precedent. The *receipt* of plaintiff's deed after Mr. Field had put it upon record, was not such a waiver ; because (1) defendant had already a good title, and plaintiff *lost no title* by that deed ; and (2) the deed was put upon record without authority, and there is no evidence that when *Doty* received it he knew that the conditions as to making and recording the letters of attorney had not been complied with, and there can be no waiver of a breach without knowledge of it. *Cobb v. Hatfield*, 46 N. Y., 537.

Counsel also contended that while, if *Doty* had brought an action at law to recover moneys paid by him to plaintiff, upon the ground that he had failed to keep her agreement, he would, perhaps, have been obliged to tender to her a release of the title conveyed to him by the deed, before he could maintain *that* action, yet the rule is different in equity (*Dunn v. Amos*, 14 Wis., 115, citing *McCormick v. Malin*, 5 Blackf., 533); and that whatever might be required of *Doty* if he had himself brought suit in equity to rescind the contract, the case is different where he merely defends a suit upon an instrument never delivered to him except upon a condition precedent, unperformed, and where there never has been, therefore, any contract upon his part; and that " a waiver of the performance of a condition is not to be implied from the *mere silence* of the other party in case of a breach, unless such silence be inconsistent with any other explanation." 1 Story on Con., 32a; *Jackson v. Crysler*, 1 Johns. Cas., 125; *Gray v. Blanchard*, 8 Pick., 292; 12 Wall., 47. 3. That the delivery of the bond and mortgage was obtained by *fraud;* and, this action being between the original parties, that fact may be shown to defeat a recovery.

DIXON, C. J. The question of *Mrs. Kercheval's* title, or whether the same was valid in her or had passed to the defendant *Doty* by the tax deeds, at the time she made convey ance of the lands to him in consideration of which the bond and mortgage in suit were given, is not one which is open to examination or decision in this case, unless the truth should be that there was fraud, circumvention or some improper advantage on the part of the plaintiff in the transaction or settlement with the defendant, by which the defendant was induced to accept her conveyance of the lands and to execute and deliver his bond and mortgage in security. Fraud, it is said, will vitiate everything, and, no doubt, if shown, would vitiate a settlement of that kind. The objection of fraud, so far as any such is made, will be spoken of hereafter. Passing by such objection, or assuming that none exists, the negotiation which resulted

in the conveyance by the plaintiff and the giving back of the mortgage by the defendant, appears to have been an adjustment and compromise of a *bona fide* controversy existing between the parties respecting the title to the lands; the plaintiff claiming title from the original source, or under the government, and the defendant that he had acquired it by virtue of the tax deeds.   It is not the policy of the law to stir up the embers or to rekindle or allow to be rekindled the fires of past strifes and controversies, the flames of which have once been extinguished or the burning quenched by reconciliation and compact between the parties.   The law loves peace, and hates dissensions and turmoils and litigations, and all its policy and maxims are against their being revived or unnecessarily prolonged.   The tendency of the judicial mind has always been, not to resuscitate contentions once fairly put to rest, nor to permit the way to be opened by which they may be renewed or further agitation succeed.   The matters adjusted being fairly the subject of debate or doubt at the time of settlement, and each party acting with full knowledge of the facts and of the nature of the claim asserted by the other, and neither being deceived or misled by the other, but the negotiation being honestly conducted, the inclination of the courts has been to treat such settlements as being in all respects as binding and conclusive and effectual to estop the parties, as would have been the judgment or decree of a court of competent jurisdiction finally determining and adjudicating the same matters between the parties, and finding that their rights and interests were the same as they themselves had determined them to be upon mutual and amicable agreement and concession.   Such has ever been the view of the courts, and such the policy of the law, which favors the right of private arrangement and composure of differences, and encourages its exercise in order to prevent litigation and strife, and which will always sustain and uphold the action of the parties where no element of fraud or unfairness or of serious and

injurious mistake appears to have intervened. To constitute a valid compromise and adjustment under such circumstances, and one which will not be opened or allowed to be disturbed by the courts against the will of either party, it is in general only necessary that there should in good faith have existed a controversy between the parties upon some subject of pecuniary value and interest to themselves, and with regard to which their rights or the claims respectively set up by them, or by one of them and denied by the other, may be said to have rested in some degree of doubt or uncertainty at the time, and thus to have been proper matters for amicable arrangement and pacification, or for judicial investigation in case no arrangement had been made. *Calkins v. The State*, 13 Wis., 394, and authorities there cited. To close the doors of dispute, therefore, and preclude all future investigation into the merits of the claims settled, these things only are requisite : that the claims should have been in some doubt, and their validity controverted ; that they should have been asserted in good faith ; and that there should have been no fraud, undue advantage or mistake in the settlement. By mistake, as here used, is of course not intended a mistaken view or opinion respecting the validity or invalidity of the respective claims or any of them, but a detrimental mistake or ignorance of fact, by which the party was actually deceived and misled to his prejudice, and without which he would not have entered into the treaty or settlement. With this understanding, and within these terms, a settlement and compromise of doubtful claims, like those which existed between these parties respecting the title to the lands then in dispute, is final and conclusive ; and, no matter what the actual and true merits of their respective claims may have been pending the controversy, the same will not afterwards be inquired into or examined. The settlement is a complete bar to such inquiry and examination. And that the claims here set up and settled were such as to bring them within the denomination of doubtful, or at least to exclude

all imputation of bad faith in the parties who made them, there is ample evidence to show. A mere false claim, a sham, one set up without any colorable pretense or plausible foundation, might not come within the terms or definition of a compromise, and might not sustain it. Characterized by bad faith, the preferring of such a claim would itself be a fraud, and concessions made or rights yielded on the strength of it would not be lost nor the settlement be a bar. But such was not at all the nature of the claims here made and settled. When the compromise between these parties took place, the plaintiff asserted title under a patent from the United States to one Benjamin Kercheval, deceased, who, by his last will and testament, which had been duly admitted to probate at the place of his decease, had devised the same to the plaintiff. The answer of the defendant alleges that the agent of the plaintiff " then claimed to bring, or had brought, an action or actions to recover the possession of the same (said lands) for and in behalf of the plaintiff ; whereupon and for the purpose of avoiding legal proceedings, and for the sole and only purpose of quieting the title to said lands,"the settlement was made. The defendant asserted title under four several tax deeds issued at different dates between the years 1840 and 1856, both inclusive. Those tax deeds may have been supposed to be, and very possibly were, subject to some doubts and exceptions as to their validity. Under those circumstances, there can be no doubt that the questions and differences between the parties were properly the subject of mutual arrangement and compromise, and that the settlement which did take place was the result of some concessions on the part of each to the demands made and rights asserted on the part of the other.

The foregoing principles and rules are elementary in our law, and no further citations are required in their support than those found in the brief of counsel for the plaintiff : 1 Parsons on Contracts, 438, and *Stapilton v. Stapilton*, 3 Leading Cases in Equity, Hare & Wallace's Notes, 380, 406 to 430, and authorities referred to. " The prevention of litigation," says Mr. Par-

Kercheval vs. Doty and others.

sons, "is a valid and sufficient consideration; for the law favors the settlement of disputes." And again he says: "With the courts of this country the prevention of litigation is not only a sufficient, but a highly favored consideration, and no investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise, it being sufficient if the parties entering into the compromise thought at the time that there was a question between them." And the learned authors of the notes above referred to also say: "When a compromise is effected with due legal solemnity, either in the form of a present release of all right, or of an executory agreement, it is necessarily binding at law, and will not be set aside in equity, unless on those grounds of mistake or fraud which give a right to equitable relief against every act or obligation. A compromise of doubtful rights will not, therefore, be opened or rescinded by chancery, even when unequal or harsh in its operation; nor where the only consideration for the relinquishment of a valid claim on the one side is the abandonment of an invalid one on the other. For, if it were necessary, in order to sustain an adjustment of conflicting claims, to determine their relative validity and value, no compromise would be possible, and the uncertainty, delay and scandal would be incurred, which such arrangements are usually designed to avoid." And in another place they say: "It is held in general in this country, that compromises are to be favored, irrespectively of the nature of the controversy compromised; and that they cannot be set aside because the event shows all the gain to have been on one side, and all the sacrifice on the other, if the parties have acted in good faith, and with a belief of the actual existence of the rights which they have respectively waived or abandoned. Hence, when a compromise has been fairly effected, its validity will be independent of the merits of the controversy on which it is founded, and it cannot be re-opened for

the purpose, or with the effect, of reviving the dispute which it was meant to terminate."

To permit the defendant now to disregard the settlement, and raise anew the questions designed to be closed by it, thus casting the burden upon the plaintiff, at this late day, of establishing her title, after the defendant had received and enjoyed the benefits of her conveyance, and of the peace and security afford by it, for a period of ten years and upwards before the commencement of this action, and after he had sold and conveyed considerable portions if not all of the lands, would, as it seems to us, be the very extremity of injustice and wrong. The defendant cannot be permitted to do so, unless the claim of fraud in the settlement is made out.

The other objections taken and urged in behalf of the defendant are, that there was never a valid delivery of the bond and mortgage; or, if technically delivered, it was upon an agreement which was never performed on the part of the mortgagee, and therefore voidable at the election of the mortgagor; and that the delivery was obtained by fraud, and, this action being between the original parties, that fact may be shown to defeat a recovery. It is in connection with these objections that the point of fraud to defeat the compromise will be considered.

In the view we have taken of the objections thus urged, no separate examination of them is required. The actual delivery of the bond and mortgage into the hands of Mr. Field, the mortgagee, who acted and received the same as the agent of the plaintiff, is not a fact in dispute. The bond and mortgage were delivered by the defendant to Mr. Field, and by him the mortgage was immediately put upon record. But the delivery to him, as is claimed, was upon an agreement or condition, in the nature of a condition precedent to the instruments having any effect in his hands, that he was first to execute and cause to be recorded a power of attorney, as spoken of, to John Potter, and that he

was also to record the power of attorney from the plaintiff to himself by virtue of which he had executed and delivered the deed of the lands in her name. The deed of the lands was executed and acknowledged on the 25th of April, 1859, and recorded in the office of the register of deeds of Winnebago county on the next day. The dates of execution, acknowledgment and recording of the mortgage were the same. No power of attorney to Mr. Potter was ever made or recorded; and that from the plaintiff to Mr. Field was not recorded until the 11th day of June, 1869.

The position assumed by counsel for the defendant is, that Mr. Field was merely entrusted with the keeping of the papers for a short time, in which he was to make up his mind whether he would execute the power of attorney spoken of, to Mr. Potter; and, if he concluded to do so, that then the mortgage and other papers were to be recorded, and the delivery and arrangement considered complete. It is claimed that he retained and recorded the mortgage in violation of this agreement, and so that there was never any valid and sufficient delivery to make it binding and effectual in law. Counsel have exhibited great industry and research, and have referred us to several adjudged cases, in which it seems to have been held that there may, under some circumstances, be what is termed a conditional delivery, even where the deed or other instrument is put into the hands or custody of the grantee or other person in whose favor the same may have been executed. Cases of this nature are undoubtedly rare and exceptional, yet it seems not impossible for them to arise. Circumstances may occur where the grantor is willing to make the grantee the mere custodian or keeper of a deed not yet ready or intended to be finally delivered. Circumstances may possibly occur where, from necessity, the grantor will do so, or it may happen from the great trust and confidence reposed by him in the honor and integrity of the grantee. As observed by counsel, it seems to rest in the discretion of the parties and to be competent for them to make what agree-

ment they will, as between themselves, in relation to the effect of the deed when placed in the hands of the grantee, or otherwise that it is competent for the grantor, in case he chooses to take upon himself such risk, to make the grantee his agent or trustee for the mere purpose of holding the deed. Such seems to be the effect of some of the decisions cited, and, unless there is something in the principles and policy of the law which should forbid a deed or other instrument voluntarily delivered over or passed into the possession of the grantee or other person to whom executed, from being shown by parol evidence to have been otherwise than absolutely delivered, the position of law contended for by counsel for the defendant seems to be established. It may, however, still be a question, how far verbal testimony should be admitted, if admissible at all, for the purpose of defeating the deed or other instrument in the hands of the grantee who insists upon its validity and upon the delivery as absolute. It may be a question whether delivery to the grantee upon parol condition ought to be sanctioned or permitted at all. Counsel admit that the possession of the instrument is *prima facie* evidence of an unconditional delivery, but they say it is only *prima facie*, even in case of a deed of land. The holder and person to whom the delivery was made is described in the instrument as the grantee, and the effort to show by parol that such is not his real character, or that he is not what the instrument on its face purports to make and acknowledge him to be, but that he is, in truth and in fact, only the depository or bailee of the grantor, having the instrument in his hands for the purpose of safe keeping merely, or holding it subject to the performance of some ulterior promise, condition or agreement — such effort, we say, seems at first blush to savor very strongly of being one to contradict or vary the express terms of a written agreement by verbal testimony, or to control it by showing some inconsistent contemporaneous parol agreement, which it is well known the rules and principles of evidence will not permit. The evidence here to show the al-

leged condition or agreement was merely verbal, no writing to that effect having been made or signed by the parties, and the testimony was received against the objection of the plaintiff. It becomes, therefore, a question of very great delicacy and importance, whether such testimony was admissible; and we forbear to express any definite opinion upon it. Assuming that parol testimony is admissible for such purpose, it is manifest that it should only be received and acted upon with the greatest caution. In cases of doubt or conflict, preference should always be given to the written instrument as expressing the true agreement of the parties and the whole of it, and as having been unconditionally delivered. The case would be one of that class, where, the proposition being to set aside or invalidate a written contract by evidence of a far less certain and reliable character than the writing itself, the greatest clearness and certainty of proof would be required. It would be like those cases where the object is to correct or reform a deed or other instrument on the ground of mistake, or to set aside or rescind it on the same ground, or to show that a deed absolute on its face was executed and intended to operate only as a mortgage, or to prove that the character or contents of an instrument were unknown to a party when he signed it, and that he was deceived and misled into executing it; in all which cases, as well as some others of a different kind, the rule is that the facts must be established beyond any reasonable controversy. *Newton v. Holley,* 6 Wis., 592; *Lake v. Meacham,* 13 id., 355; *Fowler v. Adams,* id., 458; *Harrison v. The Juneau Bank,* 17 id., 340; *McClellan v. Sanford,* 26 id., 595; *Kent v. Lasley,* 24 id., 654; *Kellogg v. Steiner,* 29 id., 626; *Murphy v. Dunning,* 30 id., 296; *Blanchard v. McDougal,* 6 id., 167; *Knoll v. Harvey,* 19 id., 99; *Tiernan v. Gibney,* 24 id., 190. Whatever might be thought as to the preponderance of the testimony here, were it a question where less strict proof was required, it can hardly be claimed, we think, that it fulfills the requirements of the above rule. There is, at all events, most clear and undeniable con-

flict of testimony.  The defendant and two witnesses besides
himself testify to the condition or agreement, but their testi-
mony is not always very clear and positive, while in some par-
ticulars they are shown to have been clearly mistaken.  They
were testifying to a transaction long since passed by, and it is
not at all surprising that they should have fallen into mistakes,
or that their memories should be in some respects at fault.  On
the other hand, Mr. Field, the agent of the plaintiff, who trans-
acted the business and was himself the person to whom the
mortgage was given, flatly and positively contradicts and denies
that there was any such condition or agreement connected with
the delivery of the bond and mortgage.  Mr. Field, if not a
lawyer, appears to be a man accustomed to business, and testi-
fies with clearness and intelligence.  No effort is made to im-
peach him, and in several quite material points he is corrobo-
rated by proofs made of other facts.  It is clear, we think, that
the testimony does not attain that certainty and clearness which
ought to be required in order to establish the facts contended
for by the defendant.

But if we were not against the counsel for defendant upon the
foregoing point, it is very clear that we should be compelled
to hold against them upon the point that the defendant had
not waived the condition or agreement, as he claims it to have
been, long before the commencement of this action.  The po-
sition of counsel is, that mere silence on the part of the defend-
ant for any length of time, with knowledge by him that the con-
dition had not been complied with, and also with the plaintiff's
deed to him of the land recorded and in his possession, would
not operate as a waiver on his part of the condition.  We un-
derstand the letter of the defendant to Mr. Field of July 19th,
1859, as being a distinct waiver of the condition as the defend
ant then claimed it to be.  He says: "You are probably *not*
aware that this default in you invalidates, *should we choose to so
consider it*, the whole settlement." This was a clear intimation
that the defendant did not then choose so to consider it, although

he asserted that it was in his power to do so.    If such had been his intention, that was the time for him to have made his election.    It is fully shown that at the time of writing this letter the defendant knew that no power of attorney to Mr. Potter had been executed, and also that the letter of attorney from the plaintiff to Mr. Field had not been recorded.    He testifies that he found "the *Kercheval* power was not recorded," about two months after the settlement.    Now, with full knowledge of those facts, it clearly appears to us, under the circumstances of this case, that mere silence on the part of the defendant for any considerable length of time—here for the period of ten years and upwards—would constitute a waiver.    Such knowledge, as it seems to us, coupled with a retention of the deed from the plaintiff and assertion of title under it, ought now to estop the defendant from insisting upon or taking any advantage of the condition, or of the fact that it was not performed.    Such knowledge raised a duty on the part of the defendant, both moral and legal, if he intended to disavow the settlement because the condition had not been complied with, to notify the plaintiff of such intention, and to restore or offer to restore to her such title as he had acquired under the deed, in order that she might pursue her remedy by action before it became forever too late.    There may be cases where mere silence or acquiescence without any notice given will not amount to a waiver ; but they must be entirely different from this, where, instead of tacitly assenting to the state of affairs as they were and continued for years, and thus inducing a belief that he was content, the nature of the transaction was such as to require the party to speak out and plainly make known his dissent, if that had been his purpose and intention.    Cases far more strong in favor of the party maintaining his silence than anything which the facts of this case suggest, may be found, in which it has been held that such party had waived his own rights by his mere silence, or by failing to give notice of his dissent, at a time when by so doing loss or damage to the rights of third persons might have been saved

and prevented. See *Ladd v. Hildebrant*, 27 Wis., 135, and cases there cited.

We are furthermore of opinion that the subsequent sales and conveyances of the lands, or of considerable portions of them, by the defendant to different purchasers likewise constituted a waiver of the condition. Such sales and conveyances were made with full knowledge of the facts touching the non-performance of the alleged condition, and with no notice to the plaintiff of any disavowal of the settlement on that account.

Now, with regard to what is claimed to have been *fraud* in the compromise, or in obtaining delivery of the bond and mortgage, it grows entirely out of the alleged neglect of Mr. Field to comply with the condition upon which it is said the bond and mortgage were delivered. It seems hardly necessary, after what has already been said, to remark that this cannot be tor-tured into fraud, or anything in the nature of fraud, which will vitiate the settlement or avoid the bond and mortgage in the hands of the plaintiff. Mr. Field testifies, with respect to the power of attorney from the plaintiff to himself not having been immediately recorded, that it was a mere omission, and no doubt it was so. It was for the interest of the plaintiff as well as the defendant that it should have been upon record, and no bad or fraudulent motive can be imagined for its having been withheld. And as to the power of attorney to Mr. Potter, enough has also been said with respect to that.

Upon the whole case, therefore, we can see nothing upon which the defense set up can possibly stand, and are of opinion that the judgment of the court below dismissing the complaint should be reversed, and the cause remanded to that court with direction that the proper judgment of foreclosure and sale be entered in favor of the plaintiff, as required by law and the rules and practice of the circuit courts in such cases.

*By the Court.*—It is so ordered.