HOLMAN MANUFACTURING COMPANY, Respondent, vs.
DAPIN, Appellant.

*May 4—June 5, 1923.*

*Accord and satisfaction: Part payment of liquidated demand:
When debt discharged: Disputed demands: Trial: Imma-
terial error: Disposition of case.*

1. Payment of part of an undisputed liquidated debt does not dis-
   charge the debt altogether, even when it is expressly agreed
   that it is received in full satisfaction.  This rule, however,
   does not apply when a debtor makes a composition with part
   or all of his creditors, who agree to accept less than their
   respective claims.

2. An action for the purchase price of goods was not brought
   on a liquidated demand where the account between the parties
   had continued for over a year, the buyer having made pay-
   ments at different times and from time to time had returned
   goods which had been accepted by the seller, and the buyer's
   answer did not deny the amount claimed but pleaded an off-
   set based on an alleged agreement whereby the seller guar-
   anteed to stand any loss if the goods dropped in price during
   the year, the offset claimed arising directly out of the con-
   tract relating to the sale and not out of any collateral trans-
   action.

3. Defendant having alleged payment of a named sum in full
   satisfaction of the debt, and the jury having found that there
   was a dispute or controversy regarding an alleged agree-
   ment for plaintiff to stand the loss if the goods dropped in
   price during the year, a judgment for plaintiff will be re-
   versed, but the case will not be remanded for a new trial
   where the facts and evidence show that the answer of the
   jury would be the same if the more technically correct ques-
   tion proposed by the defendant as to whether there was a
   *bona fide* dispute between the parties as to the amount due
   were submitted at a new trial.

APPEAL from a judgment of the circuit court for Shawano
county: EDGAR V. WERNER, Circuit Judge.  *Reversed.*

Plaintiff brought action to recover $338.40, the balance
alleged to be due on certain orders of merchandise shipped
to defendant.  Defendant admitted receipt of the goods,
the correctness of the charges made for the various items,

but alleged that the goods were sold under an agreement whereby plaintiff guaranteed to stand the loss if the goods dropped in price during the year.  Defendant then alleged that plaintiff demanded $838.40 as the amount due; that defendant claimed he was entitled to a credit of approximately $400 because the price of the goods had decreased during the year; that a settlement was made whereby plaintiff agreed to accept $500 in full satisfaction of its claim; and that defendant sent a check for this amount which was accepted by plaintiff.

Plaintiff's agent testified that no such guaranty was made; that the only agreement was that plaintiff might return goods which he did not want; and that certain items of goods were returned and full credit given for them.

Defendant testified that he was urged to take the goods because he had space in his store to keep them; that the agent guaranteed that plaintiff would stand the loss if the price fell within one year.  Members of the defendant's family gave corroborating testimony.

The goods were delivered between July and November, 1920, the bill amounting to $2,381.49.  Between August 31, 1920, and May 21, 1921, defendant received credit for $1,543.09 on account of cash and merchandise returned. In May and June plaintiff wrote letters pressing defendant for payment.  On June 23, 1921, defendant wrote a letter which stated in part:

"I have received your letter of June 21st.  You seem to ignore entirely my several letters to you in reference to this account.  I am at a loss to understand the reason therefor. If you will come to Cecil I will settle this account in accordance with the terms and conditions agreed upon between us at the time that I gave the order for this merchandise."

In an answer to this letter plaintiff stated that the terms of the contract were stated in the invoice and that no special agreement had been made.  A check was requested "for the full amount that you owe us."

On September 30, 1921, defendant sent the. following letter:

"As per our telephone conversation of last week I am inclosing herewith my check payable to your order for $500 in full settlement of our account to date' for any and all claims for merchandise purchased."

A check was inclosed upon the back of which was this indorsement: "This check is executed in full settlement of any and all accounts to date for any and all claims for merchandise purchased."

Plaintiff accepted the check. Shortly thereafter the account was placed in the hands of an attorney for collection. A representative of plaintiff testified:

"I got a letter three weeks before the check was sent, and clearly understood from that that he was making the claim, . . . and that from the time that letter was sent to the time the check was sent *Dapin* adhered to that claim."

The jury in a special verdict found that when the goods were sold no guaranty was made by plaintiff's agent that the price would not fall, or that plaintiff would bear the loss if it did; that plaintiff's agent, prior to the receipt of the check for $500, had had a dispute with defendant regarding what the agreement was when the goods were purchased; and that the check was cashed by plaintiff knowing that defendant made claim for a reduction on the balance of the account due for the goods.

The trial court ordered judgment in favor of plaintiff for the amount asked in the complaint.

The cause was submitted for the appellant on the brief of *P. J. Winter* of Shawano, and for the respondent on that of *Andrews & Brunner* of Shawano.

JONES, J. There is a familiar rule which has often been stated by this court that the payment of part of an undisputed liquidated debt does not discharge the debt altogether, even when it is expressly agreed that the payment is received in

full satisfaction. This is based on the principle that such part payment furnishes no consideration for relinquishing the balance of the debt. The rule is of ancient origin. It may be traced back at least as far as a decision of the court of common pleas thus reported by Sir EDWARD COKE:

"And it was resolved by the whole court, that payment of a lesser sum on the day in satisfaction of a greater, cannot be any satisfaction for the whole, because it appears to the judges that by no possibility a lesser sum can be a satisfaction to the plaintiff for a greater sum: but the gift of a horse, hawk, or robe, etc., in satisfaction is good. For it shall be intended that a horse, hawk, or robe, etc., might be more beneficial to the plaintiff than the money, in respect of some circumstance, or otherwise the plaintiff would not have accepted of it in satisfaction. But when the whole sum is due, by no intendment the acceptance of a parcel can be a satisfaction to the plaintiff: but in the case at bar it was resolved that the payment and acceptance of parcel before the day, in satisfaction of the whole, would be a good satisfaction in regard of circumstance of time; for peradventure parcel of it before the day would be more beneficial to him than the whole at the day, and the value of the satisfaction is not material: so if I am bound in £20 to pay you £10 at Westminster and you request me to pay you £5 at the day at York, and you will accept it in full satisfaction of the whole £10, it is a good satisfaction for the whole: for the expenses to pay it at York, is sufficient satisfaction." *Pinnel's Case,* 3 Coke's Rep. 238.

This rule, however, does not apply when a debtor makes a composition with part or all of his creditors who agree to accept less than their respective claims. In such case each creditor, relying on the promise of the others, has a consideration—the promise of the others for his own agreement.

Counsel for plaintiff argue that in this case the claim of plaintiff was a liquidated demand existing in favor of a single creditor against his debtor, and that since the jury found no agreement for the guaranty as to reduction of

price for the goods sold there was no consideration for the agreement to accept less than plaintiff's claim.

The account between the parties had continued for over a year. Defendant had made payments at different times, and from time to time had returned goods, which had been accepted by plaintiff.

In the answer the amount of plaintiff's claim was not denied, but an offset was pleaded based on the agreement above stated, and that the reduction or offset claimed was more than sufficient to meet plaintiff's claim. It appears from the pleadings and testimony that the offset claimed arose directly out of the contract relating to the sale of the goods and not out of any collateral transaction. It was an offset which if sustained would wholly defeat plaintiff's claim. Under these facts we do not consider that the suit was brought on a liquidated demand.

"By the weight of authority, where the debtor has an offset or claim for damages against the creditor which the latter does not concede, his claim against the debtor, although not disputed, except in respect of the offset or damages claimed, will nevertheless be considered unliquidated, the view being taken that there is no material difference between a dispute directly involving the claim itself and a dispute involving an offset against the claim; that whatever may be the ground of the dispute the fact remains that there is one." 1 Corp. Jur. 556, and cases cited; 1 Ruling Case Law, 194.

It is argued by plaintiff's counsel that the claim of defendant for an offset or reduction was wholly baseless; that it was a trumped-up defense "based on a myth." The defendant and two other witnesses, his wife and daughter, positively swore that the guaranty agreement as to the reduction of prices was made, while plaintiff's agent as positively denied it. On this issue the jury found for the plaintiff, and on this finding counsel base the argument that there was nothing to compromise, treating the finding of the jury

as establishing beyond question that the claim of an offset was utterly without foundation and made in bad faith.

The jury were the judges of the credibility of witnesses, and if the correctness of their finding that the agreement was not made were the question before us, we should not feel justified in disturbing it. But the conclusion of counsel that because the jury answered this question favorably to plaintiff we are bound to hold that there was no controversy as a subject of settlement is not so clear.

That the parties went through the forms of a compromise of their controversy is beyond dispute. It is also undisputed that the plaintiff cashed the check with full knowledge of defendant's claim that it was intended as payment in full. Under those circumstances it became immaterial whether the claim of defendant was in fact well founded or not, unless it was made fraudulently or in bad faith.

If a party could not peaceably and honestly settle out of court a claim made against him except at the risk of having the subject reopened by a lawsuit, there would be little inducement to an amicable adjustment of controversies. The only alternative would be to fight to the bitter end in the courts any claim which an adversary might make.

One does not need much learning or experience in business to understand that the law has not yet become an exact science; that witnesses are often mistaken, and sometimes untruthful; that juries are not infallible in their conclusions; that the results of litigation are far too uncertain, but that the expense and annoyance attending lawsuits are very certain indeed. Such considerations as these, and the fact that it is to the interest of the state that there should be an end of litigation, have led the courts to look with very great favor upon the peaceable settlement of disputes out of court and to hold that, "when a compromise has been fairly effected, its validity will be independent of the merits of the controversy on which it is founded, and it cannot be reopened for the purpose, or with the effect, of reviving the dispute

Holman Mfg. Co. v. Dapin, 181 Wis. 97.

which it was meant to terminate" (*Kercheval v. Doty*, 31 Wis. 476, 487), and that "no investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise, it being sufficient if the parties entering into the compromise thought at the time that there was a question between them." *Ibid.* 487; *Galusha v. Sherman*, 105 Wis. 263, 81 N. W. 495; *Kowalke v. Milwaukee E. R. & L. Co.* 103 Wis. 472, 79 N. W. 762; *Continental Nat. Bank v. McGeoch*, 92 Wis. 286, 66 N. W. 606; *Harris v. Kennedy*, 48 Wis. 500, 4 N. W. 651; *Zimmer v. Becker*, 66 Wis. 527, 29 N. W. 228; 12 Corp. Jur. 336; 5 Ruling Case Law, 878.

At the close of the evidence defendant's counsel asked that the following question be submitted to the jury: "Was there a *bona fide* dispute between the parties over the amount due to the plaintiff before the defendant forwarded the check of $500 in full payment of the account?" but the question was submitted in the form stated in the statement of facts.

We think that the question proposed by defendant's counsel should have been given substantially as requested, but we do not consider that plaintiff's counsel can avail themselves of this fact. Indeed they argue that the refusal to submit the question in the form proposed was not prejudicial to the defendant. The jury found that there was a dispute or controversy regarding the agreement.

Defendant's counsel did everything in their power to have a question technically correct submitted to the jury, and in view of the instructions and the whole course of the trial it may be fairly assumed that the answer of the jury would have been the same if the question as proposed by defendant's counsel had been submitted. Hence it is our conclusion that the case should not be sent back for a new trial, but that the judgment should be reversed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.