LANGE, Respondent, vs. DARLING & COMPANY, Appellant.

*January 15—February 13, 1940.*

For the appellant there was a brief by *Olin & Butler,* and oral argument by *Roy G. Tulane* and *Robert M. Rieser,* all of Madison.

For the respondent there was a brief by *Hill, Beckwith & Harrington,* attorneys, and *George A. Solsrud* of counsel, all of Madison, and oral argument by *Mr. Solsrud.*

FRITZ, J. The plaintiff seeks to recover a balance of $446.58, which he claims the defendant, Darling & Com-

pany, a foreign corporation, owes on an account stated between the parties after a dispute as to the amount of his bonus on sales made by him as a salesman for the defendant. Upon findings by the court and a finding by the jury on issues raised under the pleadings and the evidence, judgment was entered for plaintiff's recovery from defendant of the amount claimed. On its appeal from the judgment defendant assigns error in several respects. In view of our conclusion that prejudicial error in at least one respect assigned as error necessitates a reversal of the judgment, it suffices to note but the facts essential to the consideration of that error.

For twelve years preceding November, 1933, plaintiff sold fertilizers for the defendant. His salary during the later years was $40 a week plus a bonus, which was part of his compensation and was figured on his sales during the preceding fiscal year ending at about November first. In October, 1933, defendant by letter advised its salesmen, including plaintiff, that there would be some change in the plan for the bonus for the year beginning November, 1933. However, the new plan, called a point system, was not sent out and plaintiff did not receive a copy by mail until March, 1934. He wrote the defendant on April 7, 1934, that it was not satisfactory to him and that his spring season sales had already surpassed the 1933 season, and he presented for defendant's consideration for his territory, and "as a substitute for the present bonus system," a proposition that defendant increase his salary for the entire fiscal year of 1934 to $50 a week and pay him a bonus of fifty cents per ton on all sales of superphosphate and mixed goods in excess of four thousand tons. Defendant answered without definitely accepting or rejecting plaintiff's proposed plan, and by the end of October, 1934, there was no consent by plaintiff to defendant's proposed new point system for computing the bonus. In the meantime plaintiff's sales for the year ending in October,

1934, were from five thousand eight hundred to five thousand nine hundred tons, as compared to three thousand four hundred forty-five tons for the preceding year, on which he had received $356 as bonus. Plaintiff estimated that that would also be about the amount of his bonus for the year ending 1934, if figured under the proposed new system, although his sales in the latter year were almost double the tonnage sold in the preceding year. Because of that consequence and other matters which would have affected plaintiff's earnings, he was dissatisfied, and when in addition he was offended by a false accusation which was made by the defendant's vice-president in October, he sent his written resignation to the defendant. Thereupon defendant arranged for conferences at which its representatives requested plaintiff to withdraw his resignation, and the parties discussed on what plan plaintiff's bonus was to be computed for the year ending in 1934. Plaintiff claims that finally it was agreed between the parties that defendant would pay him $800 as his bonus for that year, and plaintiff contends that settlement of matters which were in dispute in good faith constituted an account stated. On the other hand, defendant contends that its promise to pay additional bonus for the year in question so as to have plaintiff receive at least $800 was upon the agreed condition that he would continue to work for the defendant for the next fiscal year.

On November 10, 1934, the defendant paid $300 to plaintiff "as part payment on your 1934 bonus." On November 12, 1934, defendant wrote plaintiff,—

"Confirming our conversation last Friday in regard to your work last year and the coming year, you are to get a bonus of at least $800 for 1934 and at least as good a bonus as that for 1935 providing you have as good a year. Effective immediately we are raising your salary from $40 to $50 per week."

Defendant also paid an additional salary of $10 per week to plaintiff for his work until he quit defendant's employment

on December 1, 1934, pursuant to a resignation dated November 24, 1934. On November 21, 1934, plaintiff, in connection with writing to defendant's sales manager, Casler, to please accept his resignation before December 1st, and expressing his regret, wrote,—

"I know that I have about $500 bonus still due and I believe it was earned and I don't know what attitude will be taken regarding its payment after my resignation. It is based on last season's work and I believe it will be sent me."

In sending his resignation on November 24, 1934, plaintiff wrote,—

"With my resignation in this manner, I don't know what attitude you will take regarding the rest of my bonus. One thing certain, I am aware of the fact that I earned it and while in your employ have been as faithful and as square with you as any employee you ever had. I think the payment of this bonus should be determined by past efforts through which it was honestly earned. It is regretful to me that my connection is being severed but with the same fairness to you as in the past I do not feel that I can conscientiously continue. I trust you will pay the rest of my bonus as if I were still working for you."

On November 26, 1934, defendant, in connection with accepting plaintiff's resignation, wrote,—

"In regard to the bonus, working under the bonus plan in effect for 1934, our records indicate that your bonus amounts to $364.18 of which we have already advanced you $300. As soon as the final check is made here we will forward you the balance whatever it may be. We believe it will be in the neighborhood of sixty or sixty-five dollars."

In reply to plaintiff's letter dated December 2, 1934, stating, "I know I told Mr. Casler I would stay but I could see that I was not getting back to myself as I had hoped to. I believe I earned the bonus which you agreed to pay as a minimum and I hope you will agree with me," defendant's sales manager wrote on December 5, 1934,—

"In regard to the bonus, although you don't say so I am taking it from your letter that you are asking us to pay a bonus of $800 for your 1934 work. I am sure that I stated very plainly at the time you were in the office that this $800 would be paid you, providing you worked for us through 1935, and don't think that I gave you the impression that it would be paid if you resigned. At the time you left the office, we hadn't the slightest idea that you were going to resign. We are making a final check of our bonus figures now, and I expect to be able to send you a check for the small balance still due shortly."

In regard to that letter plaintiff testified on the trial,—

"I knew prior to December 5th what Casler said in his letter as far as figuring the bonus on the old bonus plan. On December 5th Mr. Casler wrote that his position was that I had to stay to get the bonus and I accepted that as being his position at that time. I knew that his position was that I was obligated to stay for a year to get this $800. It was my position on December 5th that I did not have to stay. So I knew on December 5th that there was a definite dispute as to just what he had agreed upon back in the early part of November when this new arrangement was made."

In January, 1935, defendant sent its check for $53.42 to plaintiff in a letter stating,—

"We are inclosing our check for $53.42 which is the balance due on your 1934 bonus after the final corrections have been made to take care of the expense item about which we wrote you recently and one or two minor mistakes that we found in our figures at the time they were rechecked."

In relation to that letter and check plaintiff testified,—

"When I received the letter of January 15, 1935, . . . there was a check with that letter. I understood then that they were offering to pay me a bonus computed on the basis of the old bonus arrangement at a figure which was substantially as I had computed it under the old bonus arrangement. I knew that this letter referred to the bonus figured on the old bonus plan and not on the agreement. Notwithstanding that I accepted the check and cashed it."

On the trial the court found that defendant did agree on November 9, 1934, "to pay plaintiff an additional bonus for the year ending November 1, 1934, so as to bring his bonus income for the year up to a minimum of $800;" and the jury found that plaintiff did not agree, in consideration of defendant's agreement to pay the additional bonus and as a condition thereto, to continue to work for the defendant for the succeeding fiscal year. That finding by the jury is challenged by defendant on this appeal on the ground that there is no credible evidence to sustain it, and defendant also contends that if its promise to pay additional bonus so as to bring it up to $800 was not upon the condition that plaintiff would continue to work for the ensuing year, and in consideration thereof, then there is no consideration for its promise to pay the additional bonus and the transaction in relation thereto does not constitute an account stated. We find it unnecessary to pass upon those contentions in view of our conclusion, upon consideration of the record in its entirety, that the evidence establishes conclusively that commencing in November, 1934, the parties were honestly, and not unreasonably, in a definite dispute as to whether the defendant's obligation to pay additional bonus so as to bring plaintiff's bonus income up to $800 was conditional upon his continuing in defendant's employment for the ensuing year. That there was ample basis for defendant to honestly and reasonably claim that its added obligation was conditional, and that the parties were honestly and definitely in dispute in respect to the obligation can reasonably be inferred from plaintiff's testimony that he knew when he received defendant's letter of November 26, 1934, that it would not recognize his claim for additional compensation; that he knew defendant was not figuring his bonus on the arrangement which he claimed was made to pay him $800; and that he knew on December 5, 1934, that it was defendant's position that he was obliged

to stay for the ensuing year in order to be entitled to the $800, and that on December 5, 1934, the defendant was making a final check of its bonus figures and expected to send plaintiff "a check for the small balance still due." The fact that there existed in November and December, 1934, and January, 1935, a *bona fide* controversy as to whether the defendant's obligation to pay a minimum of $800 was conditional and if so at what amount it was to be computed should not be deemed refuted by the fact that on the subsequent trial the jury's finding that the obligation was not conditional was unfavorable to the defendant. See *Holman Mfg. Co. v. Dapin,* 181 Wis. 97, 102, 193 N. W. 986. That fact found by the jury did not negative the existence of a *bona fide* controversy in relation thereto at the time the plaintiff in January, 1935, accepted and used the check which defendant sent with its letter stating that the amount of the check was "the balance due on your 1934 bonus." Under these circumstances, including the existing *bona fide* controversy as to on what plan the bonus was to be figured and what the amount thereof would be, the plaintiff's acceptance and use of the check for $53.42, without any effective objection or protest to its being considered "the balance due on your 1934 bonus," constituted an accord and satisfaction which operated to discharge defendant's obligation in full under the rule that,—

"When a claim is in dispute, and the debtor sends to his creditor a check or other remittance which he clearly states is in full payment of the claim, and the creditor accepts the remittance or collects the check without objection, it is generally recognized that this constitutes a good accord and satisfaction." 1 Am. Jur. p. 225; Page, Contracts (2d ed.), §§ 2504, 2510; *Thomas v. Columbia Phonograph Co.* 144 Wis. 470, 129 N. W. 522; *Nassoiy v. Tomlinson,* 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695; *Toledo Edison Co. v. Roberts,* 50 Ohio App. 74, 197 N. E. 500.

On the other hand, under the circumstances the rule upon which plaintiff relies, viz., "payment of a part of an undis-

puted liquidated debt does not discharge the debt altogether, even where it is expressly received in satisfaction of it" (*Continental National Bank of Chicago v. McGeoch,* 92 Wis. 286, 310, 66 N. W. 606), is not applicable as the payment made was not of an undisputed claim. Not only was there a dispute as to whether the obligation to pay a minimum of $800 was conditional, but there was also the dispute as to on what plan the bonus was to be computed, as well as what sales were to be included or deducted and what was the amount to which plaintiff was entitled, if the obligation to pay $800 was conditional as defendant claimed. By reason of the controversy in the latter respects, the claim was unliquidated as to the amount to which plaintiff was entitled, as well as in dispute as to the plan on which the bonus was to be figured. It follows that by reason of the accord and satisfaction as the result of the plaintiff's acceptance and use of defendant's check for $53.42, and the consequent discharge in full of defendant's liability for plaintiff's bonus, the judgment must be reversed and the complaint dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.